## Steele's Administrators *versus* Steele.

After a party has agreed to the arrangement and settlement of a family dispute, if this was made under a mistake, which he had the means of ascertaining at the time, and suffers it to rest uncorrected through his own laches more than six years after his right of action accrued, the statute of limitations will bar his recovery.

The party cannot arrest the running of the statute of limitations by his own negligence, or by any arrangement for his own convenience.

ERROR to the Common Pleas of *Westmoreland county.*

Joseph Steele died in 1837, having devised a farm to each of his sons Joseph, Daniel, and James. And to his sons Eli and Absalom $658 each, payable when David became of age, and charged the legacies on his real estate. David became of age in February, 1843, and there was a meeting of the devisees and legatees in February, 1844, to make a final arrangement "between those who got land and those who got money." After they met a dispute arose whether the devisees were to pay equally or in proportion to the value of the land given to them respectively. James claimed an abatement, asserting that his land was less valuable than the others; and the will not being produced or present, some asserted that it provided that all should pay equally, and others that they should pay according to the value. It was finally agreed as a compromise that James should pay less than the other two, and that each should give his notes to the legatees for such amount as was to be paid by him. And notes under seal were accordingly given by James to Eli and Absalom each for $227 or $414 in all; Joseph to the same legatees for $454, and David for the balance, $448; so that a deduction was made in favour of James of $24.66 from the one-third of the whole charge, which was added to the

liabilities of Joseph and David. The notes bore interest and are all paid.

Joseph died in 1845, and his tract of land was sold by his administrator for payment of debts to E. Steele for $1640. This action was brought by James, to May Term, 1852, to compel the estate of Joseph to contribute, James alleging that he had paid more than his share according to the quantity, quality, and value of the land devised to him; that at the time he gave his notes he was under a mistake as to the terms of his father's will; and that he was not precluded by the settlement then made.

The defendant insisted that the settlement was conclusive, being the adjustment and compromise of a family difficulty and dispute; that the notes given by James to Eli and Absalom, for their legacies charged on the land, were a payment and extinguishment of the latter; and that even if James was entitled to contribution, he should have brought his action within six years from the time the note was given.

*Cowan*, for plaintiff in error.—The notes given by James, and the acceptance by his brothers, operated an extinguishment of the legacies: Miltenberger v. Schlegel, 7 *Barr* 242; Stewart's Appeal, 3 *W. & Ser.* 476; Dewalt v. Eldred, 4 *W. & Ser.* 422. The giving of a note by an administrator for a debt or legacy works a discharge: Geyer v. Smith, 1 *Dall.* 347; Commonwealth v. Shryock, 15 *Ser. & R.* 69; Durling v. Neigh, *Id.* 114.

Plaintiff should have brought his action within six years from the time he paid the legacy; as the note paid the legacy and more than plaintiff's share of it, he should have brought his action within six years from the time he gave it.

*Foster*, for defendant in error.—The tracts divided were of unequal quantity and of unequal value. James paid one-third of the whole charge, and his brothers are bound to contribute in proportion to the value of their respective tracts; which largely exceeded that of James.

The bonds were no more than a collateral security, and did not discharge the lien of the legacy—they were not payment. The question of discharge is one of intention; it will not be implied in the absence of proof, and the presumption is that the security was taken as collateral or as cumulative.

The notes were given under a mistake that plaintiff's land was equally bound. The will was not produced, and he acted under a misrepresentation of its contents, that each was to pay one-third of the charge.

The statute of limitations did not begin to run till after payment, which was made within six years from suit brought.

[Steele's Administrator *v.* Steele.]

The opinion of the Court was delivered by

Lowrie, J.—We think the plaintiff is too late in seeking the correction of this mistake. And he cannot excuse his delay on the ground that he did not discover it till recently; for he might have discovered it the next day after it was made if he had attended to it, and he ought then to have insisted on its correction. Here is nine years' delay. But it is urged that he did not pay his share of the legacy until four or five years ago, and that he could not sue for a contribution until he had paid. Admit this, still the non-payment was his own affair; he might delay payment as long as the legatees would let him, without perpetuating his right to correct the mistake made between him and others. The legacies seem to have fallen due in 1842, when David arrived at age, and then arose the duty of contribution, and the share of each was defined at the settlement in 1843. Either might have paid his share at once, and then he could have sued for a correction in *assumpsit*, and it is admitted that in that case he must have sued within six years.

Possibly the delay of payment might delay the right of action for the correction; but a party cannot stop the running of the statute of limitations by his own negligence, or by any arrangements for his own convenience. The right of action must be taken to have vested when the mistake was made, for then he might have paid; and then, by the will, the legacies ought to have been paid; then the law raised the duty and implied the promise of correction. This implied promise being simultaneous with the mistake, the statute began to run then, unless it was suspended by some matter which the claimant could not control.

Judgment reversed and a new trial awarded.