## GUFFEY v. GULF PRODUCTION CO.

(District Court, W. D. Pennsylvania. April 14, 1926.)

No. 3059.

**1. Limitation of actions ⚖=66(1)—Corporation's agreement to repay moneys to be received thereafter under assignment by stockholder held not equivalent to demand note, as respects limitations.**

As respects limitations agreement for repayment by corporation of moneys thereafter to be received from an assignment by stockholder *held* not equivalent to a demand note, as made under circumstances indicating demand as basis for action.

**2. Limitation of actions ⚖=66(15)—Demand for repayment of money, when necessary for cause of action, must, under Pennsylvania law, be made within reasonable time.**

A demand for the repayment of money, when necessary to give cause of action, must under Pennsylvania law be made within a reasonable time, or within statutory period of limitation of such suit, after the cause of action accrued, since statute cannot be extended by act or failure to act.

---

**3. Limitation of actions ⟨⟩66(15)—Stockholder's demand for repayment of moneys received by corporation after 20 years held not within "reasonable time."**

Where stockholder on alleged verbal contract for repayment of money received by corporation, under assignment permitted debt to exist for over 20 years without demanding its payment, demand for repayment cannot be held to have been made within "reasonable time."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

**4. Limitation of actions ⟨⟩66(2)—Stockholder's cause of action for repayment by corporation of money loaned accrued on repudiation of claim by tendering note in full settlement, dispersing with necessity of demand to start running of limitations.**

Where stockholder had oral agreement of corporation to repay him for moneys received by it under assignment, held, corporation's action, tendering stockholder note, with voucher setting out that note was in full settlement, constituted a repudiation of any further claim, whereupon cause of action accrued, and limitation period began without a demand.

See, also, 17 F.(2d) 930.

Watson & Freeman, of Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for defendant.

GIBSON, District Judge. Prior to May 15, 1901, the plaintiff was a member of the J. M. Guffey Company, a partnership composed of himself, John H. Galey, and A. F. Lucas, which owned about 1,000,000 acres of oil leases in Texas and Louisiana. Shortly before the date mentioned, a syndicate, of which plaintiff was a member, was organized to take over the holdings of this partnership, and a Texas charter was obtained. The company was called the J. M. Guffey Petroleum Company. The name was later changed to the Gulf Production Company. The plaintiff was made president of this corporation, and one J. C. McDowell its general manager. A few days before the corporation was chartered, the plaintiff had obtained the interests of his former partners. The syndicate agreement set forth that the corporation, not yet chartered, was to take over, inter alia, the oil and gas leases of the J. M. Guffey Company in Texas and Louisiana. The agreement did not set forth the holdings of the plaintiff in detail, but described them thus: "Leasehold land in Texas and Louisiana under conditions as now held by J. M. Guffey."

No reservation of any lease was mentioned.

After the charter was granted to the defendant company, under its then name of the J. M. Guffey Petroleum Company, it proceeded to do business. Formal transfer of the Guffey oil and gas leases in Texas and Louisiana was not made to it until June 12, 1901. One of the leases held by J. M. Guffey Company when the J. M. Guffey Petroleum Company was organized was known as the Page lease, and was upon 15 acres in Jefferson county, Tex. This lease was, prior to the formal transfer of the J. M. Guffey Company leases to the newly organized corporation, transferred to a company known as the Hogg-Swayne Syndicate for the sum of $180,000, payable as this syndicate transferred parts thereof to purchasers. J. C. McDowell, general manager of the Petroleum Company, pursuant to order from the J. M. Guffey Company, received the proceeds of the sale from time to time and deposited them to the credit of the Petroleum Company. It is around the proceeds of the sale of the Page lease that the controversy centers in the instant case.

The plaintiff claims that he announced at a meeting of members of the syndicate, which later organized the Petroleum Company (now the defendant), that the Page lease was not to be transferred by the partnership to the new company, as a verbal agreement had theretofore been made for its sale to the Hogg-Swayne Syndicate. This declaration is alleged to have been made at a meeting in New York about May 10, 1901. Plaintiff's witness, J. C. McDowell, also has testified to such a declaration at such a meeting. Each of the four living members of the syndicate (exclusive of plaintiff), on the other hand, testified that he was present at no such meeting and heard no such declaration; that the agreement of the plaintiff with the other members of the syndicate was to transfer all his holdings in Texas to the corporation to be formed. Four or five members of the syndicate were dead prior to the date of the trial.

The plaintiff alleges that, when he was in Texas, on May 16, 1901, J. C. McDowell, general manager, requested him to provide funds for the new corporation, by directing the Hogg-Swayne Syndicate to turn over to him (McDowell) the proceeds of the Page lease as they became payable, and that the Petroleum Company would repay him, with interest, within a reasonable time after he made demand for payment in Pittsburgh. He complied with this request, and caused.

the order for the transfer of such funds to be made, and in due time the moneys were received by the Petroleum Company. The transaction was then entirely forgotton by him, he stated, until the year 1920, when it was recalled to his recollection by J. C. Mc-Dowell. He later (in 1922) made formal demand upon the defendant company for the sum received by it under the arrangement, $180,000, with interest from the date of its receipt, and, upon refusal, brought the present action.

J. C. McDowell's testimony is of like effect, except that he states the arrangement for repayment of the amount loaned was, in effect, that the petroleum company would repay to plaintiff the amount transferred to it, with interest, when he should make demand for payment in Pittsburgh.

The defendant admits that the proceeds of the Page lease were received by it, but denies the amount of them was a loan from plaintiff. It claims that the Page lease was one of those contemplated by the original syndicate agreement, and that it was not among those formally transferred to the Petroleum Company by the plaintiff, or the J. M. Guffey Company, only because it had been sold to the Hogg-Swayne Syndicate. It contends that the proceeds of its sale were its property under the syndicate agreement, and were so received.

In 1903, W. L. Mellon, vice president of the defendant corporation, wrote the plaintiff: "I beg to advise you that, after adjusting all accounts between the J. M. Guffey Company and this Company, the final account now stands $49,498.70 credit in favor of the J. M. Guffey Company. Trusting this will be satisfactory, I remain," etc.

No reply was made to this letter by plaintiff. On June 16, 1903, the secretary of the defendant company wrote the plaintiff: "I beg to hand you herewith note of this company, dated June 16, 1903, for four months, to your order, for $50,000, with interest, being full settlement of all accounts to this date as between J. M. Guffey, or J. M. Guffey Company, and the J. M. Guffey Petroleum Company. Kindly receipt and return the inclosed voucher."

The voucher was for "settlement in full to date," and plaintiff signed a receipt thereon, "in full for the above account." The note was accepted, and was paid when due by defendant; and plaintiff's own books entered the payment as a settlement in full.

The defendant alleges that, prior to the date of the first letter quoted supra, a disagreement had existed between the plaintiff and defendant in regard to the condition of the account between them, particularly in respect to the proceeds of the sale of the Page lease; that the disagreements were settled after conference between plaintiff and officers of the defendant company; and that defendant paid, and plaintiff accepted, $38,000, in lieu of the claim of plaintiff to a greater amount of the proceeds of the sale of that lease. This sum of $38,000, it is claimed, was included in the total settlement for $50,-000 by the note of June 16, 1903. Defendant further alleges that an account, showing inter alia, this credit of $38,000 upon the Page lease proceeds, was furnished plaintiff prior to the delivery of the note for $50,-000. The plaintiff denies any disagreement as to accounts, and any conference or agreement relative thereto, and also that he was ever furnished with a copy of the account showing the $38,000 credit to him.

After verdict in favor of plaintiff for the full amount claimed, less $38,000, the defendant moved for a new trial. The motion is based upon the alleged error of the court in refusing defendant's request for binding instructions. Defendant contends its request should have been sustained for two reasons: First, because the testimony disclosed that the claim was barred by the statute of limitations; second, because the settlement of 1903 both as an account stated and as an accord and satisfaction, prevented recovery by plaintiff.

The defendant has viewed the first reason assigned from three standpoints. The agreement of defendant's manager being, according to plaintiff's testimony, that defendant would repay the amount of the proceeds of the Page lease within a reasonable time after demand in Pittsburgh, defendant claims that the agreement was the verbal equivalent of a promissory note payable upon demand, and the limitation began to run at once, or, at the latest, when the last payment upon the Page lease was turned over to defendant. It further declares that, even if the agreement be not regarded as an obligation payable upon demand, and it be held that the contract contemplated a demand as a basis of action, still the action was barred by the statute of limitations, as a rule of law in Pennsylvania, in such case, requires the demand to be made within a reasonable time, which by analogy to the statute is held to be within six years from the date of the agreement.

The third proposition of the defendant is to the effect that a cause of action accrued to the plaintiff, and the limitation period began, when defendant in 1903 turned over its

voucher to plaintiff, with the declaration that the sum of $50,000, mentioned therein, was in full payment of all accounts to that date. The voucher, with accompanying correspondence, it is contended, was a denial of any indebtedness beyond the sum admitted, and made formal demand unnecessary.

[1] We are unable to agree with defendant in its declaration that the agreement in question was the equivalent of a demand note. The circumstances under which it was made, whether as detailed by plaintiff or by his witness McDowell, seem to indicate a demand as a basis for an action. The moneys in question had not yet been received by defendant, and in this respect the situation differed materially from that existing in the case of a demand note. In theory, suit itself would be a sufficient demand for payment of the note, and the action could be commenced at any time after the delivery of the paper; but in the instant case, when the agreement for repayment was alleged to have been made, no moneys had been received by defendant, and the demand contemplated was to be made in a distant city. These facts distinguish the present case from Volli v. Wirth, 164 Mich. 21, 129 N. W. 9, 37 L. R. A. (N. S.) 297, cited by defendant; wherein it was held that a loan payable within a reasonable time after demand was the equivalent of a demand note, and that the statute of limitations began to run with the transaction itself.

[2] We next consider defendant's proposition that a demand for the repayment of money, where such demand is necessary to give a cause of action, must be made within a reasonable time—by analogy, the statutory period of limitation of such suits—after cause of action has accrued. A casual examination of the Pennsylvania decisions during the trial of the present issue caused us at that time to disbelieve in the existence of the rule of law claimed by the defendant. The proposition of the defendant was flatly laid down in certain early cases, among them Laforge v. Jayne, 9 Pa. 410; Steele's Administrators v. Steele, 25 Pa. 154; Pittsburgh & Connellsville R. Co. v. Byers, 32 Pa. 22, 72 Am. Dec. 770; Waterman v. Brown, 31 Pa. 161; Morrison's Administrator v. Mullin, 34 Pa. 12; Rhines' Administrators v. Evans, 66 Pa. 192, 5 Am. Rep. 364. The authority cited in support of the rule was a Massachusetts equity case, Codman v. Rogers, 10 Pick. 112, wherein equitable relief was denied on account of the laches of the plaintiff. Cases later than those just cited question the existence of the rule and deny

17 F.(2d)—59

weight to the Massachusetts case, which was first cited as authority for it; and others go so far as to deny its existence in relation to the particular facts of such cases. See Swearingen v. Sewickley Dairy Co., 198 Pa. 68, 47 A. 941, 53 L. R. A. 471; Cook v. Carpenter, 212 Pa. 165, 61 A. 799, 1 L. R. A. (N. S.) 900, 108 Am. St. Rep. 854, 4 Ann. Cas. 723. In Cook v. Carpenter, supra, the existence of the rule was directly denied in so far as it was sought to be applied to a subscription to stock not presently payable in full.

Were we to conclude our examination of the decisions with Cook v. Carpenter, we would be justified in assuming that the trend of the later cases was opposed to the rule; but a study of subsequent cases seems to justify the conclusion that, where a demand for the repayment of money is necessary to furnish a cause of action, and the time of demand is within the control of the plaintiff, that demand must be made within a reasonable time. In other words, the statute of limitations cannot be extended by the act, or failure to act, of the plaintiff. See Himrod v. Kimberly, 219 Pa. 546, 69 A. 72; Gardner's Estate, 228 Pa. 282, 77 A. 509, 29 L. R. A. (N. S.) 685. In Himrod v. Kimberly, supra, the contract to deliver ore was made in 1892. In 1893 the defendant told plaintiff that he was unable to deliver the ore. Suit was not brought until 1901, and the Supreme Court of Pennsylvania held that the action was barred by the statute of limitations. Cook v. Carpenter was cited to the court, but was unnoticed in the opinion, which quoted at length from cases announcing or upholding the rule, viz. Steele's Administrators v. Steele, 25 Pa. 154; Waterman v. Brown, 31 Pa. 161; Barnes v. Hardware Co., 203 Pa. 570, 53 A. 378.

The exceptions to the general rule are in the nature of suits in bank deposits, or involving continuing trusts, and suits on stock subscriptions, or for payments due by members of mutual insurance societies. In all such cases the time of demand is not wholly within the control of the plaintiff, or the cause of action arises only upon the happening of certain contingencies.

[3] Applying the rule discussed, supra, the court was in error in denying defendant's request for binding instructions, and a new trial must be granted. The plaintiff allowed an alleged verbal contract debt to exist for over 20 years without demanding its payment. The only thing in the guise of excuse for this delay was a remarkable forgetfulness of the debt, followed by an equally re-

markable recollection of it. In the meantime, many of those acquainted with the circumstances when the indebtedness was alleged to have had its inception had died, and others had become hazy in their recollection of them. Under such a statement of facts it cannot be claimed that the demand for repayment was made within a reasonable time. [4] We have not, however, founded our decision in the instant matter wholly upon the existence of the rule of law by which the contract creditor is required to make his demand, when such is required by the contract prior to suit, within a reasonable time. The action of the defendant in its correspondence with plaintiff, and by tendering him a note for $50,000, accompanied by a voucher setting out that the note was in full settlement of all demands of the plaintiff, repudiated any further claim of plaintiff upon it, and thus made any formal demand for payment unnecessary as a basis of suit. A cause of action accrued upon such repudiation, and the limitation period began. Miller v. Bank, 172 Pa. 203, 33 A. 684; Pennsylvania R. R. v. Cameron, 280 Pa. 458, 124 A. 638, 33 A. L. R. 1281; Robinson v. Floyd, 159 Pa. 165, 28 A. 258; Union Tool Co. v. F. & M. National Bank, 192 Cal. 40, 218 P. 429, 28 A. L. R. 1417.

Having reached the conclusion that a new trial must be granted for the reasons hereinbefore set forth, it is needless to pass upon the contention of the defendant that the claim of plaintiff was defeated by the settlement of 1903. We may remark, however, that it is our impression that many of the essential facts in connection with that matter were in dispute, and consequently the submission of the settlement to the jury was not error.

The motion for a new trial will be granted.