## First National Bank of Ashley v. Reily

[blacked out]

*John L. McDonald* and *M. F. McDonald, Jr.*, for plaintiff.

*Daniel J. Flood* and *James L. Brown*, for defendant.

FLANNERY, J., for court en banc, July 7, 1947.— Judgment was entered to no. 147, July term, 1930, on a sealed note in favor of plaintiff bank and against John A. Reily for the sum of $12,000. On November 5, 1938, a scire facias was issued and on April 5, 1940, judgment was entered in favor of plaintiff and against the estate of John A. Reily, who had died on December 6, 1933. An execution was issued upon this revived judgment and certain real estate was sold at sheriff's sale on May 3, 1940, at which time plaintiff bank paid taxes on the property in question for the years 1937 and 1939, in the amount of $342.89.

Defendant, Margaret Reily, a sister of John A. Reily, asserted title to the real estate by virtue of a deed from him dated October 19, 1926, and recorded on September 8, 1933. She took the position that when the sci. fa. was issued on the original judgment by the bank in 1938, she owned the property which, therefore, would not be bound by the judgment entered on that writ. After considerable litigation she prevailed.

The bank now institutes this action to recover the sum of $342.89, the taxes assessed against the property

of Margaret Reily and due and owing from her but paid by the bank at the sheriff's sale.

To the complaint in assumpsit defendant filed preliminary objections in the nature of a demurrer, pleading inter alia:

1. That the claim is barred by the statute of limitations, and

2. That plaintiff acted as a volunteer in paying the taxes and cannot recover.

Deferring for the moment the question involving the statute of limitations, there is grave doubt that defendant can sustain her position, that plaintiff acted as a volunteer in paying the taxes and cannot recover them back. In support of her position defendant has quoted distinguished authorities running from Lackey v. Mercer County, 9 Pa. 318, to Shenango Furnace Company v. Fairfield Township, 229 Pa. 357. These citations are authority for the proposition that if one receives money fairly, which is justly due him, without fraud or restraint, it can never be recovered back. But the case before us is not one in which plaintiff seeks to recover back that which it has paid to defendant but rather it seeks to be reimbursed by her for her obligation which it, the bank, has discharged. It seems to us that the question is governed by the general principles of restitution as set forth in A. L. I. Restatement of Restitution, §43 (1) :

"A person who, by payment to a third person, has discharged the duty of another or has released another's property from an adverse interest, doing so unintentionally or acting because of an erroneous belief induced by a mistake of fact that he was thereby discharging a duty of his own or releasing property of his own from a lien, is entitled to restitution from such other of the value of the benefit conferred up to the value of what was given, unless the other disclaims the transaction."

It was early decided in Pennsylvania that a mortgagee who paid taxes to protect his lien or interest in the property might recover the sum so paid from the person who was the owner of the property when the taxes fell due: Hogg v. Longstreth, 97 Pa. 255. And that principle has been developed to the general proposition that if a third party is required to pay taxes, such party steps into the shoes of the municipality, and is subrogated to its rights, which includes the right to proceed against the record title holder: Pennsylvania Co., etc., Trustee, v. Bergson, 307 Pa. 44. See also Pennsylvania Trust Company of Pittsburgh, etc., v. Earnest, etc., 128 Pa. Superior Ct. 331, and Integrity Trust Co. v. St. Rita B. & L. Assn., 112 Pa. Superior Ct. 343.

In the last case just referred to, the Superior Court, by Justice Keller, held (p. 345):

"This right of subrogation, with its attending advantages, arises by operation of, and depends on, equity alone. . . . It will not be enforced where the equities are equal, or the rights not clear, nor to the prejudice of the legal or equitable rights of others: . . ."

We are satisfied that the claim before us meets these tests and it is our conclusion that the right of subrogation exists. Plaintiff has standing to maintain its action and defendant would be ordinarily obliged to proceed upon the merits.

But the defense of the statute of limitations raised by the demurrer gives us more serious concern. According to the complaint in assumpsit, the taxes were paid on May 3, 1940. Suit was instituted for their recovery on February 27, 1947. What circumstances are there that take this claim out of the operation of the statute?

There seems to be some conflict of authority on this question, many of the earlier cases holding that when the party aggrieved has the means of knowledge, the statute will not be tolled by mistake or ignorance,

especially where there has been no fraudulent conceal-
ment by the other party: Steele's Administrators v.
Steele, 25 Pa. 154; Matilda Montgomery's Appeal, 92
Pa. 202.

More recent cases, however, have made a distinction
which excludes from the operation of the statute claims
of a quasi-contractual nature or those in which a con-
tract is implied by operation of law, rather than by
agreement of the parties.

The Act of March 27, 1713, 12 PS §31, applies to
"all actions of debt grounded upon any lending, or con-
tract without specialty", etc.

Our courts have divided contracts generally into
three classes. See Hertzog v. Hertzog, 29 Pa. 465:

1. Constructive contracts, which are fictions of law
adapted to enforce legal duties by actions of contract,
where no proper contract exists, express or implied.

2. Implied contracts, which arise under circum-
stances which, according to the ordinary course of
dealing and the common understanding of men, show
a mutual intention to contract, and

3. Express contracts, where the terms of the agree-
ment are openly uttered and avowed at the time the
engagement is entered into.

In Bedell v. The Oliver H. Bair Company, Inc., 15
D. & C. 405, it was held, at page 409:

"In the instant case there was no intention when the
money was paid that it was to be returned. The pay-
ment was made in execution of the supposed principal
contract, and was intended to be retained by the defend-
ant. It was not paid for the use of the plaintiff but for
the defendant's use. No contract could be implied from
the facts. The plaintiff's remedy does not then arise
out of contract inferred from the facts, but from the
unjust enrichment of the defendant; that is, from
quasi contract. The statute of limitations, therefore,
does not apply."

This case went to the Superior Court in 104 Pa. Superior Ct. 146, where the lower court's decision was affirmed with a modification as to the amount due and while the higher court did not pass specifically on the question of the application of the statute of limitations, it recognized a constructive contract as a fiction of law adopted for the purpose of enforcing legal duties by actions ex contractu, where no proper contract exists, express or implied, and adopted the conclusions of Hertzog v. Hertzog, supra. In Sgro v. Pa. Burial Co., Inc., 113 Pa. Superior Ct. 20, recovery of payments made by plaintiff over a period of nine years was permitted where the relationships between the parties was construed to be quasi contractual on the theory that the statute of limitations did not apply. The Superior Court quoted the Bedell case, supra, as authority, as follows (p. 25) :

"Another defense suggested by appellant is that plaintiff can in no event recover any sums paid more than six years prior to the issuance of the writ. In view of what we said in the Bedell case (p. 155) with respect to the facts in these cases giving rise to constructive contracts—fictions of law, sometimes described as equitable liabilities upon which the law assumes to give a remedy—we are of opinion that the statute of limitations furnishes no defense to any part of plaintiff's claim."

The Pennsylvania Circuit Court for the Eastern District, in the case of City of Philadelphia v. Atlantic & Pacific Tel. Co., 109 Fed. 55, permitted fees to be collected by the City of Philadelphia beyond the period of six years, the court stating (p. 56) :

"It is contracts in fact, and not quasi contracts, that are included in the phrase just quoted, (referring to the Statute of Limitations) as the Pennsylvania courts have several times decided. The statute does not limit actions of debt that are not founded upon a lending or a contract in fact."

A similar ruling was made in Erny's Estate, 337 Pa. 542, where it was held (p. 545) :

"It is contracts in fact and not constructive or quasi-contracts, properly defined in Hertzog v. Hertzog, 29 Pa. 465, as 'fictions of law adopted to enforce legal duties by actions ex contractu, where no proper contract exists, express or implied', that are within the phrase above quoted from the Act of 1713": [The phrase referred to is "grounded upon any lending, or contract without specialty", which is cited in the opinion immediately preceding this excerpt.] "To hold otherwise", added the Supreme Court, "would, as pointed out in Richards v. Bickley, supra [13 S. & R. 395], be to hold that all actions of debt (now assumpsit) fall within the statute, rendering the words 'grounded on any lending or contract' superfluous."

The primary purpose of the statute of limitations is to set up a time limit within which suits may be brought and to bar those brought after that time has expired. It is designed to dispatch litigation, to avoid stale claims and to prevent defendants from being harassed by suits at a time when circumstances have grown dim in the memory of men and evidence and witnesses are no longer available. But such is not the case at bar. The events which gave rise to this action are comparatively fresh. They are vivid in the memories of the respective parties. The witnesses and the records are available. All the evidence has been kept alive by prolonged litigation which was only recently finally decided by our Supreme Court.

We are satisfied that the facts set forth in the complaint in assumpsit support a recovery on the quasi-contractual basis; that if established they give rise to a constructive contract, that is, a quasi contract, which is a fiction of law adopted to enforce legal duties where no proper contract exists, express or implied. Our appellate courts have clearly stated that the statute of limitations is not a bar to such action and it,

therefore, follows that the demurrer of defendant cannot be sustained.

Accordingly, the demurrer is dismissed, defendant, however, is allowed 15 days in which to file an affidavit of defense on the merits—otherwise judgment.