## Allibone *et al. versus* Hager *et al.*

*Manufacturing companies.—Personal liability of stockholders.*

1. Where the certificate of a company organized under the General Manufacturing Law of April 7th 1849, shows stock subscribed for but unpaid, a creditor of the company failing to obtain payment from the company, may recover against the stockholders individually, to the extent of the unpaid stock.

2. It was held no defence to an action against such stockholders, that they had paid up all their stock subscribed, and that the unpaid balance was subscribed for by them as the agents of the corporation, which it was to hold and sell at pleasure for its benefit: for the certificate which showed that the original stock had been subscribed by and for the defendants, is conclusive as between them and the public, and cannot be contradicted or defeated by any undisclosed arrangements between the stockholders and the corporation.

3. Where the stockholders of the company sued, represented one-third of a larger company whose property and stock had been divided into three portions, the defendants taking one-third of the original stock as the capital of their new organization; the certificate thereof, setting forth the reduction of the capital stock, and that so much was paid, leaving a balance unpaid, cannot be contradicted by showing that the stock was all paid: nor did knowledge by the plaintiffs of the division of the original company prevent them from recovering from the defendants for the full amount of stock unpaid, after a failure to recover from the company of which they were members.

4. *Held also,* that the defendants could not plead the Statute of Limitations either against the plaintiffs or against the company for calls upon the unpaid stock, though it had not been called in for eleven years: for the subscriptions unpaid were not only held in reserve to be drawn as needed, but the statute declares the continuing liability of the stockholders until the whole amount of the capital stock shall have been paid in.

ERROR to the Court of Common Pleas of *Lancaster county*.

This was an action of debt, brought by S. Austin Allibone, who survived William H. Jenks, late partners as Allibone & Jenks, for the use of Edward M. Paxson, his assignee, against the Conestoga Steam-Mills, C. Hager, David Longenecker, Hon. Alexander L. Hayes, Thomas Baumgardner, and James B. Lane, and G. T. Lane, administrator of John N. Lane, deceased.

On the 24th of December 1849, the defendants prepared a certificate under the General Manufacturing Law, setting forth that they intended to prosecute the manufacture of cotton goods under the corporate name of "The Conestoga Steam-Mills,"

[Allibone *et al. v.* Hager *et al.*]

and that $500,000 of capital stock had been subscribed, whereof each of them had taken two thousand shares of $50 each. This certificate was duly recorded and filed.

But $467,250 of this stock was paid in. To the parties paying the same, including defendants, transfers of stock proportioned to the several amounts paid, were executed. These transfers were all signed by the five defendants. Nothing was said or done respecting the $32,750 of capital stock not paid in.

The corporation went into business and acquired three factories, and on the 7th of March 1855, the stockholders divided the whole property of the company into three equal parts—a portion organizing a new corporation under the name of Conestoga Steam-Mills, No. 3—an individual taking one-third, and proceeding under the name of Conestoga Steam-Mills, No. 2—and the original corporation retaining a third of the property and the old name, but being commonly known thereafter as Conestoga Steam-Mills, No. 1.

To correspond with this division, the original company, on the 17th of January 1856, by a general meeting of stockholders, reduced their capital to $166,650, and recorded a certificate of such reduction, wherein they recited some of the circumstances of the division, and stated that the amount of stock available to the corporation was $155,750.

On the 4th of December 1856, Allibone & Jenks sold the company the cotton for which this suit was brought, and judgment was obtained against the corporation for the price thereof. The plaintiff in this suit claimed to charge the defendants with this amount upon the grounds that they subscribed to the corporation $32,750 of stock, which was never paid in; that this stock was never transferred by them; and that, according to the proceedings for reduction, $10,900 of this stock remained the property of the creditors of the corporation, and the defendants were individually liable therefor.

The pleas were *nil debet* and *nil debet infra sex annos*, to which plaintiff replied that the action did accrue within six years.

The defence was, that the plaintiffs had no equity, and that the usual interpretation of the law should not be departed from for their especial benefit. That the 19th and 20th sections of the General Manufacturing Law were obeyed, and the contemplated reduction fully carried out in exact and literal compliance and conformity with all the requirements of these sections. That the plaintiff's claim was barred by the Statute of Limitations.

The jury found (April 30th 1862) a special verdict, as follows :—

" That the defendants, on the 24th December, A. D. 1849, and on the 8th day of July 1850, made, recorded, and acknowledged

10 WR.—4

and filed the certificates, which complied in form with the requirements of the Act of April 7th 1849.

"That the firm of Allibone & Jenks, on the 4th day of December 1856, sold and delivered cotton to the corporation defendants, under the name of Conestoga Steam-Mills, No. 1, to the amount of $4793.85, upon a credit of five months; for which cotton the corporation gave their three several promissory notes, of date November 22d 1856, December 4th 1856, and December 16th 1856, each for $1597.95, which notes were protested at maturity, and thence have been and still are held by the plaintiffs. That plaintiff Jenks died, and that the plaintiff Allibone afterwards, to wit, November 19th 1857, made a general assignment, for the benefit of creditors, to the equitable plaintiff, E. M. Paxson, Esq.

"That the defendants transferred to different parties named in the transfers $467,250 worth of stock, including transfers to themselves, which had actually been paid up by them, said transfers having all been made January 5th 1850. That in the year 1855 defendants all severally disposed of the stock which they had before transferred to themselves and paid for, and from that time ceased to appear on the books of the company as stockholders; no part of the subscriptions recited in the certificate having been either charged or credited to them on the books of the company, except the certificate of December 24th 1849, hereinbefore referred to.

"That on the 7th of March 1855, an arrangement was made among the stockholders whereby the whole property of the Conestoga Steam-Mills was divided into three equal parts—a certain number of stockholders took No. 1 and carried it on, No. 2 was taken by D. Longenecker, and other stockholders took No. 3, and these parties interchangeably conveyed and released to each other as per deeds recorded, and made part of this verdict; the consideration of said conveyances being the transfer by Longenecker and the stockholders of No. 3 of two-thirds of the stock, as recited in the certificate hereinafter mentioned.

"That parties representing the original company, on the 19th day of January 1856, filed the certificate mentioned, and the jury find the facts therein stated.

"That plaintiffs knew of the division of the mills, the filing of the last certificate, and the reduction of stock thereunder. That the plaintiffs dealt with the company as an aggregate before the division, and after the division dealt with each of them, designating them by their names under the division.

"And the jury, being ignorant of the law, submit the above facts to the court, and if, upon the said facts, the court should be of opinion that the plaintiff is entitled to recover, then the

[Allibone *el al. v.* Hager *et al.*]

jury find for the plaintiff in the sum of $6214.59, to bear interest from April 30th 1862, and six cents costs.

"And if the court should be of opinion that the plaintiff is not entitled to recover, then the jury find for the defendants, with six cents costs."

Judgment was entered for defendants on the special verdict. Whereupon the plaintiff removed the case into this court, averring that the court erred in entering judgment for defendants on the special verdict. Judgment should have been entered for the plaintiff for the amount found by the jury.

*F. Carroll Brewster* and *Isaac E. Heister*, for plaintiff in error, argued : That by the 9th section of the General Manufacturing Law (P. L. 1849, p. 566), it is provided that "All the stockholders of any company incorporated under the provisions of this act, shall be jointly and severally liable in their individual capacities for all debts and contracts made by such company to the amount remaining unpaid on the shares of stock by them respectively held, until the whole amount of the capital stock, as fixed and limited by the said company, as in this act provided, shall have been paid in, and a certificate thereof shall have been made and recorded, as prescribed in the following section."

By signing, recording, and filing the certificate under which the "Conestoga Steam-Mills" went into operation, the defendants became responsible for the number of shares therein stated to have been subscribed by each, and they were estopped from giving evidence to show that no such subscriptions were made, or that they were made in any other manner, or for any other purpose than contemplated by law : Graff *v.* Pittsburgh and Steubenville Railroad Company, 7 Casey 489 ; Bavington *v.* Same, 10 Id. 358 ; Edinboro Academy *v.* Robinson, 1 Wright 210.

The court below was of this opinion, and rejected the offer of defendants to show that the subscriptions were not made for their benefit.

The defendants being originally liable for the $32,750 of unpaid subscriptions, how have they been released from such liability ?

The defendants cannot claim to escape under the Statute of Limitations. The analogies of the case (Pittsburgh and Connellsville Railroad Co. *v.* Byers, 8 Casey 22, and Same *v.* Graham, 12 Id. 77) do not apply to the situation of the defendants here : Angell on Limitations, § 115, pp. 128–9 ; Overton *v.* Tracy, 14 S. & R. 311 ; Sinkler *v.* Turnpike Co., 3 Penna. 149 ; Railroad Co. *v.* Cowell, 4 Casey 330.

Plaintiff claims as well against the corporation as the individual defendants ; he invokes a statutory remedy, which, according to the terms of the statute, continues "until the whole

amount of the capital stock shall have been paid in." Whether the corporation may have forfeited or compromised its rights against the defendants is no concern of plaintiff: Railroad Co. *v.* Kerr, 17 Barb. 582; Railroad Co. *v.* Wilson, 22 Conn. 436; Railroad Co. *v.* Clark & Thaw, 5 Casey 146; Allen *v.* Sewell, 2 Wend. 327; Moss *v.* Oakley, 2 Hill 265.

*William B. Fordney, T. E. Franklin,* and *N. Ellmaker,* for defendants in error, argued: That all the acts of the defendants in the matter were duly ratified and recognised by the corporation. They were done in entire good faith. The capital stock of incorporated companies is deemed and treated in equity as a trust fund for the payment of the debts of the incorporation; but the creditors claiming through the corporation must show that it had become the duty of the managers to call upon the stockholders for payment of the amount of their stock: 2 Story's Eq. § 1252; Vox *v.* Grant, 16 Mass. R. 505.

The plaintiff's claim is barred by the Statute of Limitations. That the facts found in the special verdict present a much stronger case for the protection of the statute than is contained in either of the cases of Railroad Co. *v.* Byers, 8 Casey 22, and Railroad Co. *v.* Graham, 12 Id. 77.

The opinion of the court was delivered by

THOMPSON, J.—The object of the company certificate required by the 1st section of the Act of the 7th April 1849, in which the name of the corporation, its objects, the capital stock subscribed, the amount paid in, to whom paid, the value of the shares into which the stock is divided, the residence of the subscribers, the number of shares by each subscribed, the county in which operations are to be carried on, the term during which the association is to exist, and the names and number of directors until the first annual election after filing the same, was mainly to advertise the public on the point most interesting to it, namely, the confidence it might repose in the concern, and the security it might look to in giving credit. In various sections of the act, the duties and responsibilities of the company are carefully defined, and the rights and remedies of creditors as carefully declared and guarded. The immunity of a stockholder, under this Act of 1849, is much greater than that of a mere partner. He is not answerable to the full extent of his private estate, but only to his proportion of the unpaid stock of the company in case of misfortune. As to creditors, all the stockholders stand bound to make good the full payment of the stock of each one. This is not an onerous provision, because, as all would be benefited in profits by the value of the capital, so would each one. Besides, too, if the company were dilatory in

the enforcement of payment by stockholders, with ample powers to effect it, the fault would be their own, and others should not be made to suffer for it.

It is under the provision contained in the 9th section of the Act of 1849, that the plaintiffs claim to hold the defendants in this case; and they contend that the company certificate of the 28th January 1856, clearly shows unpaid stock to the amount of $10,900, there being no evidence, by subsequent certificate or otherwise, that this amount of the reduced stock of this company has ever been paid, they ask to recover against the defendants to the extent of their claim, which is within that sum.

The defendants say they are not liable, because, in the original incorporation, they subscribed the stock mentioned in the certificate as agents of the corporation, and in the same capacity filed the certificate; and that the shares. paid for are all that the subscribers ever held of the stock, the surplus belonging to the company, to be sold at pleasure by it when in need of funds, or desirous of increasing its capital. But if I comprehend the ground of defence, it seems to me to be directly in conflict with the act, and in contradiction of the certificate. The act requires the stock to be subscribed for, and by, persons who are to become members of the company, and the certificate shows that all the original stock was subscribed by and for the defendants in this suit. Whatever might be the law between them and the corporation, as between them and the public the certificate is conclusive. I cannot agree, therefore, with the position that creditors have only the rights and equities of the corporation as against the stockholders. They have the rights which the statute gives; no more and no less. The certificate discloses the extent of the capital stock, and the statute renders all the subscribers to it liable for its payment when creditors call. Were undisclosed arrangements permitted to defeat or control the effect of the certificate, that safeguard would at once become a snare instead of a protection. If capital seeks for immunities, it must take them with such liabilities as are the terms upon which they are granted.

Another ground of defence is, that the plaintiffs had notice that the present organization of the company grew out of a division of the old company, and that therefore they did not and could not have given credit upon the faith of the original certificate. I do not see the force of this reason. The statute authorized a reduction of the stock. A meeting of the stockholders was held at the office of the company on the 17th of January 1856, when it was agreed that the capital stock should be reduced to $166,650 from the original amount of $500,000 subscribed, of which $467,250 was paid in. The certificate filed on the 28th January 1856 shows all this. And it shows more. It shows that the original stock was cut up into three portions,

[Allibone *et al. v.* Hager *et al.*]

and divided amongst the three mills forming the property of the first corporation. So that the stockholders in each took a third of the original stock, paid and unpaid. The defendants' certificate, therefore, set out in good faith the amount of its capital stock to be equal to $166,250, and that there was paid on it $155,750, thus leaving $10,960 unpaid capital. We deal with this transaction as one allowed by law, and hold the company to the responsibilities fixed by law. The certificate of 1856 leaves the original organization intact, so far as it is not changed therein. It does not change the names of the stockholders, nor attempt it. They continue. Their characters remain guarantees to the public. It only says that the stock is reduced in amount, and that so much is paid, and so much remains unpaid. To allow this certificate to be contradicted by showing the stock to be full paid stock, while it asserts the contrary, would be as unjust in principle as untrue in fact. For it is apparent that this company received a transfer in fact, or rather the stockholders took the one-third of the original stock subscribed to be the capital of the new organization; and of this the sum mentioned, viz., of $10,960, was unpaid. I can discover no inequity in the plaintiffs' claim against these stockholders growing out of the fact of the new organization, which should prevent them from asserting it to the extent of the unpaid stock, if the corporation is unable to pay them their claim. They accepted the provisions of the statute on these terms, and must abide by them.

A third ground of defence is the Statute of Limitation; that is to say, it is contended that inasmuch as the company have not once in eleven years called on the balance of stock, the statute would be a bar to its recovery from the stockholders. This by no means follows. Calls may have been made and paid within six years—the delinquent stockholders may have been all the time directors, and yearly receiving profits. Nothing to the contrary of this appears, and it would be strange if, in addition to this, the stockholders being the directors, could, by a failure to call in subscriptions from themselves, raise a bar in favour of themselves. The principle which ruled the cases of McCully *v.* Pittsburgh and Connellsville Railroad Co., 8 Casey 25, Byers *v.* Same, Id. 22, and Same *v.* Graham, 12 Id. 77, is not developed in this case. In those cases, by analogy to the statute, it was held that where the work had not been prosecuted according to the requirements of the act of incorporation, and no calls made within six years from the date of the subscription for payments on account of stock, a presumption of abandonment of the project arose in favour of the subscriber, and that six years was a bar to the remedy by call, and to a suit to recover the instalments so called for. Here the special verdict finds no facts

[Allibone *et al. v.* Hager *et al.*]

whatever to bring the case in hand within these principles. We have therefore the case of subscriptions not paid up, but held in reserve by the company to be drawn upon as needed. The statute authorizing the incorporation of the company provides against the application of the principle contended for, unless, indeed, nothing had been done within six years after the original subscription, by declaring the continued liability of the stockholders, " until the whole amount of the capital stock as fixed and limited by the said company, as in the act provided, shall have been paid in, and a certificate thereof shall have been made and recorded." We see no ground of escape for the stockholders in this case, and are therefore obliged to reverse the judgment of the court below, and enter judgment on the special verdict for the plaintiffs.

Now, to wit, November 2d 1863, this cause being argued by counsel, and considered by the court, it is ordered that the judgment of the Court of Common Pleas herein be reversed; and it is further now ordered and adjudged that judgment be entered on the special verdict in favour of the plaintiffs for the sum of $6214.59, with interest, from April 30th 1862, and costs.

STRONG, J., dissented.