Bell, Secretary of Banking, Appellant, *v.* Brady et al.

Argued March 22, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Joseph J. Baer,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellant.

*Dean D. Sturgis,* with him *Lewis M. D'Auria, J. Kirk Renner, M. B. McDonald, Henderson, Parshall & Crow, Shelby, Ray & Coldren, and Samuel D. Braemer,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, April 19, 1943:

This appeal is concerned with the proper application of the statute of limitations to a proceeding by the Secretary of Banking, as receiver of an insolvent bank, to recover an assessment against the stockholders for unpaid stock subscriptions.

The Secretary took possession of Title & Trust Company of Western Pennsylvania, Connellsville, Pa., on July 1, 1930. The par value of the stock of this company, which was incorporated under the Act of April 29, 1874, P. L. 73, was $100 per share, of which only $50 a share had been called and paid in. As it appeared that its assets would be insufficient to pay the depositors and other creditors in full and that the entire amount remaining unpaid on the stock would be required for that

purpose, the Secretary, on June 15, 1936, made a call for payment of the balance of $50 per share. He notified the stockholders on June 20, 1936, to pay this amount "at once", and on June 29, 1936, began suits against those stockholders who had defaulted. It was held by this Court, however, (*Harr, Secretary of Banking, v. Mikalarias*, 328 Pa. 49, 195 A. 86) that the notice which had been given by him was defective inasmuch as section 723 of the Department of Banking Code of May 15, 1933, P. L. 565, required that the demand should designate a period for payment of not less than thirty days after the sending of the notice; accordingly the actions were abated without prejudice. On July 21, 1941, the Secretary sent the stockholders a new notice, this time a correct one, calling for payment on or before September 1, 1941, and on March 30, 1942, he filed the present bill in equity against forty-eight stockholders to recover the amounts due from them respectively. Some of the defendants filed preliminary objections to the bill on the ground that it disclosed laches and that the cause of action was barred by the statute of limitations. The Court sustained the objections, dismissed the bill, and refused the prayer of a petition which the Secretary filed for a rehearing and an opportunity to explain the reasons for the delay. The Secretary appeals.

While the present proceedings are in equity, the liability of the stockholders arises out of contract and under such circumstances it is especially appropriate to apply the principle that, on the question of lapse of time, a court of equity, although not bound by the statute of limitations, will frequently adopt and apply it to corresponding rights and remedies by way of analogy to actions at law: *Todd's Appeal*, 24 Pa. 429, 431; *Neely's Appeal*, 85 Pa. 387, 390; *Dalzell v. Lewis*, 252 Pa. 283, 287, 97 A. 407, 408; *Bailey v. Jacobs*, 325 Pa. 187, 195 n., 189 A. 320, 325 n. The problem here resolves itself, therefore, into the inquiry: When did the statute of limitations begin to run in the present case?

It is well settled that where an assessment is made by the receiver in order to enforce the *additional statutory liability* of stockholders, the statute runs only from the time when it is determined to what extent such liability will have to be enforced and an assessment or demand is actually made. This was the law both before the Banking Acts of 1919, P. L. 209; 1923, P. L. 809; and 1933, P. L. 565 (*Kirschler v. Wainwright,* 255 Pa. 525, 100 A. 484), and since the enactment of that legislation (*Bell, Secretary of Banking, v. Abraham,* 343 Pa. 169, 174, 22 A.2d 753, 756; *Bell, Secretary of Banking, v. Cabalik,* 346 Pa. 115, 116, 29 A.2d 678, 679). Prior to those acts the rule was otherwise when the proceedings by the receiver were to recover the *unpaid balances of stock subscriptions;* there the statute was held to run immediately from the date when the insolvency of the corporation appeared, as by an adjudication in bankruptcy, the making of an assignment for the benefit of creditors, or the appointment of a receiver on that ground: *Franklin Savings Bank v. Bridges,* 20 W.N.C. 43; *Swearingen v. Sewickley Dairy Co.,* 198 Pa. 68, 47 A. 941; *Harrigan, Trustee, v. Bergdoll,* 281 Pa. 186, 126 A. 269; *Newton's Estate,* 46 Pa. Superior Ct. 40.[1] The reason, however, for the distinction between the two classes of cases no longer exists, for it was held in *Harr, Secretary of Banking, v. Mikalarias,* 328 Pa. 49, 195 A. 86, that section 723 of the Department of Banking Code of May 15, 1933, P. L. 565, applies to both classes, and that the Secretary, as receiver, must make a demand in the one instance as in the other as a prerequisite to the right to sue the stockholders. Since a cause of action accrues only when one has the right to institute a suit (*Philadelphia, Baltimore & Washington R. R. Co. v. Quaker City Flour Mills Co.,* 282 Pa. 362, 367, 127 A. 845, 847; *New York & Pennsylvania Co. v. New York Central*

---

[1] In the case of a solvent, going corporation the statute runs only from the time when the call is made by the company: *Allibone v. Hagar,* 46 Pa. 48; *Cook v. Carpenter (No. 1),* 212 Pa. 165, 61 A. 799.

*R. R. Co.,* 300 Pa. 242, 245, 246, 150 A. 480, 481; *MacDonald v. Leverington Construction Co.,* 331 Pa. 381, 382, 383, 200 A. 8, 9), it would seem at first blush to follow that the statute of limitations in the present case began to run against the receiver only from the date when, by proper notice to the stockholders, he demanded that payment should be made, namely, September 1, 1941.

But the question here presented is not as simple as thus indicated, because, while the statute ordinarily runs from the making of a demand where such demand is necessary to furnish a cause of action, there is a further rule which prescribes that where the time of demand is within the control of the plaintiff the demand must be made *within a reasonable time.*[2] The statute cannot be extended by the plaintiff's act or failure to act; he cannot arrest the running of the statute by his own negligence or for his own convenience. This principle has been established in Pennsylvania by a great current of authorities which have applied it under various circumstances.[3]

Our inquiry, then, must be: What constitutes a reasonable time in which the Secretary of Banking, as receiver of an insolvent bank, should be able to ascertain that an assessment will be required for the balance, or

---

[2] In the case of negotiable instruments payable on demand the statute runs from the date of the instrument (*Aarons v. Public Service Building & Loan Association,* 318 Pa. 113, 117, 118, 178 A. 141, 143; *Heimpel v. First National Bank & Trust Co. of Bethlehem,* 337 Pa. 425, 429, 12 A. 2d 28, 30, as there is presumably no valid reason why demand should not be made immediately, considering the nature of such instruments and the requirements of business expediency with regard to them.

[3] *Steele's Administrators v. Steele,* 25 Pa. 154; *Waterman v. Brown,* 31 Pa. 161, 165; *Pittsburgh & Connellsville R.R. Co. v. Byers,* 32 Pa. 22, 23, 24; *Morrison's Administrator v. Mullin,* 34 Pa. 12, 17; *Rhines's Administrators v. Evans,* 66 Pa. 192, 194, 195; *Barnes v. Pickett Hardware Co., Ltd.,* 203 Pa. 570, 573, 53 A. 378, 379; *Himrod v. Kimberly,* 219 Pa. 546, 553, 69 A. 72, 74; *Gardner's Estate,* 228 Pa. 282, 288, 289, 77 A. 509, 511.

some specific part of the balance, of the stock subscriptions? Obviously the answer depends upon the circumstances of the particular case. If there are no unusual or complicated conditions, and it is clear from the beginning that the bank is so hopelessly insolvent that a call upon the stockholders for the full balance of their unpaid stock subscriptions will be inevitable, there would be no justification for any prolonged delay on the part of the Secretary in making the assessment. If, on the other hand, the assets or the liabilities are of a more or less contingent nature, and only the gradual processes of liquidation can determine whether there will be a likely necessity for such a call, and if so, whether for all or only part of the unpaid balance of the subscriptions, the reasonable time for ascertainment of the controlling facts must naturally be correspondingly extended. A large measure of administrative discretion must be left to the receiver himself, it being important that unnecessary and excessive calls be avoided (see *Fisher v. Whiton,* 63 Sup. Ct. Rep. 175, 176). In considering what is a "reasonable time," it is a factor to be borne in mind that the longer the delay in making the call the greater the gain to the stockholders in being permitted to retain their money, since interest does not run on their subscriptions until the demand is made. It is also to be noted that section 723 of the Department of Banking Code of 1933 provides that if "at any time" after he takes possession it shall appear to the Secretary that the assets will be insufficient to pay the debts in full, he shall, "as soon as expedient," estimate the amount which shall be assessed against the stockholders; thus the legislature apparently intended to give considerable latitude to the Secretary in regard to the time in which to determine the need for an assessment; by way of contrast, section 705 provides that he must determine within a fixed period of six months after he takes possession whether or not to liquidate the business and distribute the assets of the institution.

No conclusion can be reached in this case without more knowledge of the facts. While the original appraisement showed a considerable excess of liabilities over the estimated value of the assets, and this might have enabled the Secretary to determine promptly that a call for the unpaid stock subscriptions was unavoidable, much would necessarily depend upon the nature and marketability of the assets—something not disclosed in the record. Moreover, the Secretary, in his petition for a rehearing, asserted that his delay in making demand was due largely to the necessity of waiting until the litigation in *Harr v. Mikalarias,* 328 Pa. 49, 195 A. 86; *Gordon v. Biesinger,* 335 Pa. 1, 6 A.2d 425; and *Beckman v. Buckwalter,* 341 Pa. 561, 20 A.2d 198, was concluded, as these all involved procedural questions which called for solution before he could intelligently proceed. If it be determined, after all the facts shall have been presented, that the Secretary acted within a reasonable time in making his demand for payment of the unpaid subscriptions, the statute of limitations would bar the action only after the expiration of six years from the time when payment was required by the demand. If, however, it be concluded that the principle of "reasonable time" required, under all the circumstances, that the Secretary should have made his demand earlier, the six years would have started to run from the time when such demand should have been made. Only by presentation and consideration of all the pertinent facts and circumstances at the trial of the cause can the question be satisfactorily determined. The case is not sufficiently clear on the face of the bill to justify a summary decree. Defendants should therefore be required to answer the bill of complaint and the cause be allowed to proceed to a hearing.

The decree is reversed with a procedendo. Costs to abide the event.