J-A24020-16

2017 PA Super 34

P.J.A.

          Appellant

          v.

H.C.N.

          Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 3199 EDA 2015

Appeal from the Order Entered September 18, 2015
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2014-C-3694

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

OPINION PER CURIAM:            **FILED FEBRUARY 13, 2017**

P.J.A. appeals from the order entered September 18, 2015, in the Court of Common Pleas of Lehigh County, sustaining the preliminary objections of H.C.N. and dismissing P.J.A.'s amended complaint with prejudice.  P.J.A.'s amended complaint set forth an abuse of process action and a "Dragonetti" action.[1]  P.J.A. claims the trial court erred in (1) holding

---

[1] "Abuse of process is a state common law claim. However, allegations of malicious prosecution invoke Pennsylvania's statutory law in the form of the wrongful use of civil proceedings statute or 'Dragonetti Act.' §§ 42 Pa.C.S.A. 8351-8355." **Werner v. Plater-Zyberk**, 799 A.2d 776, 785 (Pa. Super. 2002).

> An action for wrongful use of civil proceedings differs from an action for abuse of process. The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. Malicious use of civil process has to do with the wrongful initiation of such process. Wrongful use of civil

*(Footnote Continued Next Page)*

that P.J.A.'s abuse of process claim was barred by the statute of limitations, (2) deciding, at the preliminary objection stage, the factual question of whether P.J.A.'s abuse of process claim adequately pleaded H.C.N.'s improper purpose, and (3) concluding that P.J.A.'s Dragonetti claim failed to satisfy the element of a termination in his favor in the underlying proceedings. *See* P.J.A.'s Brief at 4. Based upon the following, we affirm.

The trial court has summarized the background of this case, as follows:

> The parties married in February of 2006. Their marriage lasted until March of 2007, at which time they separated and initiated divorce proceedings. There is one child born from their marriage, [Child], born in August of 2006.
>
> From March of 2007 to the present, the parties have continually engaged in extraordinarily contentious litigation in their custody action, Lehigh County Case No. 2007-FC-0427. Throughout the preceding eight years, the parties demonstrated a consistent inability to meaningfully co-parent their mutual child, leading to countless custody petitions, petitions for special relief, and allegations of contempt between the parties. Both parties continuously call on the courts to make determinations about all major aspects of [Child's] life, including, *inter alia*, religious affiliation and training, daycare, selection of an appropriate school, sports, and whether and under what circumstances the child can ride the school bus. Because of the ongoing series of petitions and court appearances, both parties have spent innumerable hours in court engaging in protracted hearings.

*(Footnote Continued)* ————————————

> proceedings is a tort which arises when a person institutes civil proceedings with a malicious motive and lacking probable cause.

***Sabella v. Milides***, 992 A.2d 180, 187-88 (Pa. Super. 2010) (quotations and citations omitted).

- 2 -

They have also incurred significant legal costs through counsel fees, filing fees, and their presence in court as it impacts upon their respective careers.

In the instant litigation, [P.J.A.] initiated this matter by filing a *pro se* Writ of Summons on November 17, 2014. He filed a *pro se* complaint against [H.C.N.] on December 31, 2014 alleging Abuse of Process and Wrongful Use of Civil Proceedings in the parties' custody action. [H.C.N.] filed preliminary objections to [P.J.A.'s] complaint. The Court scheduled oral argument on [H.C.N.'s] preliminary objections. On April 14, 2015, Attorney Todd Mosser entered his appearance and appeared on [P.J.A.'s] behalf on the same day for oral argument. Attorney Mosser requested time to file an Amended Complaint. The Court struck the original complaint without prejudice and granted Attorney Moser time to file an Amended Complaint.

On May 4, 2015, [P.J.A.] filed his Amended Complaint. [H.C.N.] filed the instant Preliminary Objections on May 26, 2015, and [P.J.A.] filed a response on June 16, 2015. The Court heard oral argument on September 8, 2015.

On September 18, 2015, the Court entered an order with an opinion sustaining the preliminary objections and dismissing the case with prejudice.

[P.J.A.] filed a Notice of Appeal on October 16, 2015. The Court directed him to file a Concise Statement of Matters Complained of on Appeal, which he filed on November 6, 2015.

Trial Court Opinion, 11/30/2015, at 1–4 (footnote omitted).

At the outset, we state our standard of review:

Our review of a challenge to a trial court's decision to grant preliminary objections is guided by the following standard:

[o]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

- 3 -

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Feingold v. Hendrzak***, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

## ABUSE OF PROCESS

P.J.A. first contends the trial court erred in determining his abuse of process claim was barred by the statute of limitations. There is no dispute that an abuse of process claim is subject to a two-year statute of limitations. 42 Pa.C.S. § 5524(1). Here, what is in contention is the date upon which that two-year time period began to run.

The limitations period for any claim begins to run "from the time the cause of action accrued." 42 Pa.C.S. § 5502(a). As the Supreme Court explained in ***Fine v. Checcio***, 870 A.2d 850 (Pa. 2005):

> In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion. Thus, we have stated that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. ... Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action.

*Id.* at 857 (internal citations omitted). *Accord Kapil v. Ass'n of Pennsylvania State Coll. & Univ. Faculties*, 470 A.2d 482, 485 (Pa. 1983) ("The true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion.").

The common law cause of action for abuse of process "is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993) (citation omitted).

> To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.
>
> Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question.

*Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002) (citations omitted). *See Weiss v. Equibank*, 460 A.2d 271, 276 (Pa. Super. 1983 ("If the plaintiff sues the defendant on a valid cause of action but brings the suit, for example, not to collect his just debt but for a collateral purpose such as blackmail the action is a malicious abuse of process."). Therefore, it follows that, in an abuse of process case, the statute of limitations is

triggered when the defendant uses "legal process" against the plaintiff for an improper purpose, which, in turn, causes harm to the plaintiff.

Here, the trial court determined P.J.A.'s cause of action for abuse of process arose on July 3, 2012, and, because P.J.A. did not file a writ of summons until November 17, 2014, his claim was time-barred by the two year statute of limitations. The trial court explained its reasoning, as follows:

> In [P.J.A.'s] Amended Complaint, [P.J.A.] averred that on June 28, 2012, he filed a petition in the parties' custody case requesting leave of Court to enroll the parties' child in a summer camp program. [H.C.N.] filed an Answer with New Matter on July 3, 2012. In her New Matter, [H.C.N.] requested sole legal custody of the parties' child. [P.J.A.] alleged [H.C.N.] made several "knowingly false allegations" in support of her request for sole legal custody. The Amended Complaint in this case asserted [H.C.N.] falsely alleged that [P.J.A.] baptized the parties' child without [H.C.N.'s] knowledge or consent, and further alleged that [P.J.A.] covertly enrolled the parties' child in kindergarten. [P.J.A.] averred that [H.C.N.'s] "true purpose in initiating that legal process [the New Matter] was to attempt to destroy [P.J.A.'s] good name and reputation; to disrupt [P.J.A.'s] work obligations; and to compel [P.J.A.] to incur significant financial expense and emotional distress." (Amended Complaint, at ¶ 36.)
>
> ****
>
> The statute of limitations applicable to a claim for Abuse of Process is two years. 42 Pa.C.S.A. §5524(1). The date that a claim for Abuse of Process accrues is different from the date when a claim for Wrongful Use of Civil Proceedings accrues. Wrongful Use of Civil Proceedings claims accrue on the date of termination of the allegedly wrongful suit because a necessary element of the claim is that the prior suit terminated in the current Appellant's favor. By contrast, Abuse of Process claims accrue on the date the alleged abuse occurred.

- 6 -

> In this case, [P.J.A.] identified [H.C.N.'s] New Matter she filed in conjunction with her Answer on July 3, 2012, as the allegedly abusive filing. Because that filing is the alleged abuse about which [P.J.A.] now complains, the cause of action accrued on July 3, 2012. Therefore, the statute of limitations ran until July 3, 2014. [P.J.A.] did not initiate his claim until November 17, 2014, when he filed a Writ of Summons. At that point, his claim for Abuse of Process was time-barred.
>
> On appeal, [P.J.A.] argues that the damages he is seeking in the form of legal fees were not realized prior to the rejection of [H.C.N.'s] allegedly false claims. He also notes that "it is error to require an abuse of process plaintiff to immediately file an abuse of process lawsuit while the validity of the underlying process has yet to be determined." [P.J.A.] does not cite any authority for this proposition of law, and the Court cannot substantiate it with its own independent research.
>
> ****
>
> Based upon [the] definition of Abuse of Process, the rationale behind a cause of action under that theory accruing upon the filing of the documents allegedly seeking to accomplish an unlawful purpose for which the purpose was not intended becomes clear. Once those documents are filed, the tort has occurred. The subsequent occurrence of legal fees may impact upon damages, but it does not impede a litigant's ability to plead the cause of action or the requisite elements thereof. [P.J.A.] could allege as a component of harm that his reputation was harmed, for example, or that he will incur attorney's fees to defend against the abusive filing. This does not change the timing for the application of the statute of limitations.

Trial Court Opinion, 11/30/2015, at 6–9 (citations omitted).

P.J.A. contends he could not have maintained an abuse of process suit until it was shown that the process was abused, and "[t]hat did not occur until March 27, 2013, when the [trial] court rejected H.C.N.'s request for primary legal custody[.]" P.J.A.'s Brief at 11. He argues, "Any suggestion that P.J.A. was required to file his abuse of process claim immediately upon

receiving H.C.N.'s false allegations in her New Matter is problematic. Such an approach encourages extra, possibly premature litigation where it might not be necessary or warranted [and also] forces an abuse of process plaintiff to make a claim before his damages are actually suffered." *Id.* at 11–12. In support of his position, P.J.A. argues:

> The better approach is found in **Shivone v. Wash. Mut. Bank, F.A.**, 2008 U.S. Dist. LEXIS 59212 (E.D. Pa. 2008). There, the court observed that "The date of the last significant event giving rise to a cause of action determines the point at which the statute of limitations begins to run" *citing* **Resolution Trust Corp. v. Farmer**, 865 F.Supp. 1143, 1149 (E.D. Pa. 1994). The **Farmer** court stated, "For tort actions, the general rule in Pennsylvania is that the statute begins to run when the cause of action arises, as determined by the occurrence of the final significant event necessary to make the claim suable," *citing* **Foley v. Pittsburgh-Des Moines Co**., 68 A.2d 517 (Pa. 1949); **Bell v. Brady**, 31 A.2d 547 (Pa. 1943); **Shaffer's Estate**, 76 A. 716 (Pa. 1910)

*Id.* at 12.

P.J.A. maintains H.C.N.'s filing of her new matter "was not the last or final significant event, but rather, that action was the *first* significant event." P.J.A.'s Brief at 12 (italics in original). He maintains "[H.C.N.'s] decision to subsequently litigate [her averments] as well constituted the continuing abuse of process." *Id.* at 13.

Having carefully considered the arguments presented by P.J.A., we find no basis upon which to disturb the trial court's decision that determined P.J.A.'s abuse of process claim was time-barred.

At the outset, it is important to note that termination in the underlying proceeding in favor of the current plaintiff is **not** an element of an abuse of

process claim.  *See Werner, supra*.  Furthermore, we find the federal district court cases cited by P.J.A. do not support his position.

In *Shivone v. Wash. Mut. Bank, F.A.*, 2008 U.S. Dist. LEXIS 59212 (E.D. Pa. Aug. 5, 2008), the plaintiff filed numerous tort claims, including abuse of process and wrongful use of civil proceedings.[2]  These claims were based upon a mortgage foreclosure action which had been commenced in March, 2004, and discontinued in June, 2004, and which the plaintiff became aware of on April, 2006.  The plaintiff contended the 2004 action contained, *inter alia*, materially false information, and the praecipe for discontinuance falsely represented the matter had been settled with her consent.  *Id.* at *3. The *Shivone* Court held, "The date of the last significant event *giving rise to a cause of action* determines the point at which the statute of limitations begins to run."  *Id.* at *8 (emphasis supplied). Addressing the tort claims **collectively**, the *Shivone* Court determined the plaintiff's 2007 action was filed beyond the two year statute of limitations because "[t]he last significant event giving rise to a potential cause of action occurred on or about June 8, 2004 when Defendants filed the Praecipe to discontinue the 2004 mortgage foreclosure action."  *Id.* at *8-9.

_____

[2] As will be discussed more fully below, an action for wrongful use of civil proceedings requires a favorable termination of the underlying proceeding in favor of the current plaintiff. *See* 42 Pa.C.S. § 8351(a)(2).

At issue in **Resolution Trust Corp. v. Farmer**, 865 F.Supp. 1143, 1149 (E.D. Pa. 1994), were a bank receiver's tort actions against the bank's former officers and directors, and attorneys, based upon certain unsound loan transactions. The Honorable Marjorie Rendell stated, "For tort actions, the general rule in Pennsylvania is that the statute begins to run when the cause of action arises, as determined by the occurrence of the final significant event **necessary to make the claim suable**." **Farmer**, 865 F.Supp 1149 (emphasis supplied). Although the bank's receiver had argued that the claims accrued when the bank wrote off the losses as a result of the transactions, Judge Rendell found "[the bank] sustained a legally cognizable injury long before it chose to recognize the losses … At the moment the money left the bank, [the bank] suffered enough legal injury to trigger the running of the statute of limitations." **Id.** at 1150.

The **Shivone** and **Farmer** decisions are consistent with Pennsylvania case law holding that once the plaintiff knows of any damages, the statute of limitations begins to run. **See Adamski v. Allstate Ins. Co.**, 738 A.2d 1033, 1041-42 (Pa. Super. 1999) ("[O]ur Court has repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined."). Therefore, we conclude **Shivone** and **Farmer** do not help to advance P.J.A.'s argument. Furthermore, "It is well settled that this Court is not bound by the decisions of federal court, other than the United States

Supreme Court, … however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." ***Eckman v. Erie Exchange***, 21 A.3d 1203, 1207 (Pa. Super. 2011).

We agree with the trial court that P.J.A.'s abuse of process claim accrued upon the date H.C.N. filed the answer with new matter, July 3, 2012, containing the allegedly false allegations, and not the later date, March 27, 2013, when the trial court denied H.C.N.'s request for sole legal custody. Accordingly, we reject P.J.A.'s claim that the trial court erred in determining that his abuse of process claim, instituted on November 17, 2014, was barred by the two year statute of limitations.[3]

## WRONGFUL USE OF CIVIL PROCEEDINGS

In his final issue, P.J.A. claims the trial court erred in concluding that he failed to state a wrongful use of civil proceedings action by failing to show the underlying proceedings terminated in his favor.

> "An action for wrongful use of civil proceedings differs from an action for abuse of process." ***Hart v. O'Malley,*** 436 Pa. Super. 151, 647 A.2d 542, 546 (Pa.Super. 1994). "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. Malicious use of civil process has to do with the wrongful initiation of such process." ***Rosen v. American Bank of Rolla,*** 426 Pa. Super. 376, 627 A.2d 190, 192 (Pa.Super. 1993) (internal citations omitted). "Wrongful use of civil proceedings is a tort which arises when a

---

[3] Due to our disposition of P.J.A.'s first argument, we need not address P.J.A.'s second argument that the trial court erred in deciding, at the preliminary objection stage, the factual question of whether P.J.A.'s abuse of process claim adequately pleaded H.C.N.'s improper purpose.

person institutes civil proceedings with a malicious motive and lacking probable cause." Pennsylvania codified the tort as follows:

**§ 8351. Wrongful use of civil proceedings**

**(a) Elements of action.--**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a)(1)-(2). A successful cause of action for wrongful use of civil proceedings must prove three elements: 1) the underlying proceedings were terminated in their favor; 2) defendants caused those proceedings to be instituted against plaintiffs without probable cause; and 3) the proceedings were instituted primarily for an improper cause. *Hart, supra* at 547.

*Sabella v. Milides*, 992 A.2d 180, 187–188 (Pa. Super. 2010).

Here, P.J.A. alleged that H.C.N. is liable for wrongful use of civil proceedings because, in 2012, she responded to his petition seeking to enroll the child in a summer camp by filing "New Matter" that contained scurrilous allegations about P.J.A. and sought termination of the parties' joint legal custody, so that she could gain sole legal custody of the child. P.J.A. further alleged that H.C.N.'s claim that she should gain sole legal custody was rejected by the trial court, and that the trial court's decision constitutes a termination of the custody proceeding in his favor.

- 12 -

Specifically, in Count I, "Wrongful Use of Civil Proceedings – 42 Pa.C.S.A. § 8351," P.J.A. alleged:

27.   All prior averments of this Complaint are incorporated by reference as set forth fully herein.

28.   [H.C.N.] used the legal process against [P.J.A.], to wit, filing New Matter seeking sole legal custody of [child], which forced a full blown custody trial.

29.   Upon information and belief, [H.C.N.'s] true purpose in initiating that legal process was to attempt to destroy [P.J.A.'s] good name and reputation; to disrupt [P.J.A.'s] work obligations; and to compel [P.J.A.] to incur significant financial expense and emotional distress.

30.   The true purposes outlined above in ¶29 were improper bases for [H.C.N.'s] New Matter and request for sole legal custody.

31.   The proceedings terminated in favor of [P.J.A.], as his request to allow his son to attend the summer camp of his choice during his custodial time was granted; and [H.C.N.'s] request for sole legal custody was denied.

32.   [H.C.N.'s] actions caused [P.J.A.] to incur in excess of $55,000 in attorney's fees.

33. [H.C.N.'s] actions as described *infra* [sic] were wanton and outrageous, manifesting a flagrant disregard for [P.J.A.'s] rights and meriting an award of punitive damages.

P.J.A.'s First Amended Complaint, 5/4/2015, at ¶¶ 27–33.

P.J.A. argues his amended complaint states a cause of action for wrongful use of civil proceedings, because

- 13 -

the Amended Complaint avers that [H.C.N.'s] request in her New Matter (which contained knowingly false allegations) for sole custody was denied - in favor of [P.J.A.] - on March 27, 2013. *See* Amended Complaint, ¶31 and Exhibit 'C.'[4] That same Order granted [sic] [P.J.A.'s] request to allow his son to go to the summer camp of his choosing during his own custodial time. *Id.*[5] The Amended complaint further avers that [H.C.N]. filed her New Matter without probable cause. *See*, Amended Complaint at ¶26. The Amended Complaint also alleges that [H.C.N.] initiated her New Matter for an improper purpose. *See*, Amended Complaint at ¶¶29-30. Thus, the Amended Complaint sufficiently states a cause of action for wrongful use of civil proceedings.

P.J.A.'s Brief at 15-16.

The trial court observed that "[t]here is a paucity of case law nationwide addressing whether and under what circumstances a custody dispute can be said to have terminated in a party's favor for purposes of

_____

[4] The custody order, stated, in relevant part:

> The request stated by defendant, [H.C.N.] (Mother), in her new matter filed on July 3, 2012, to be made sole legal custodian is **DENIED**, and the parties shall continue to share legal custody of their minor child[.]

Order, 3/27/2013, at ¶1, attached as Exhibit "C" to P.J.A.'s Amended Complaint, 5/4/2015.

[5] In fact, the order stated:

> Father's request in his petition filed on June 28, 2013, and Mother's oral request that the court designate a summer camp program for the child are **DENIED**; and each parent shall hereafter determine how the child shall spend his time over that parent's respective summer custody time.

*Id.* at ¶3.

- 14 -

subsequently pursuing a cause of action for Wrongful Use of Civil Proceedings or comparable actions in other states." Trial Court Opinion, 11/30/2015, at 9. The trial court identified *Logan v. Lille*, 728 A.2d 995 (Pa. Cmwlth. 1999), which involved a wrongful use of civil proceedings action filed by a father, after the child's mother had filed a custody petition alleging sexual abuse and caused his visitation rights to be temporarily suspended. The trial court pointed out:

> The Commonwealth Court affirmed [the order sustaining mother's preliminary objections], reasoning that the wrongful use [of civil proceedings action] was unsubstantiated due, in part, to the fact that in the custody proceedings, father's visitation rights were temporarily suspended, which did not constitute a favorable ruling for purposes of the subsequent wrongful use claim.

*Id.* at 10, *citing* *Logan*, 728 A.2d at 1000. Here, the trial court determined P.J.A.'s averment in his amended complaint that the proceedings terminated in his favor was "belied by the record." *Id.* at 10.

Analyzing P.J.A.'s claim, the trial court stated that in the underlying proceeding P.J.A. had countered H.C.N.'s new matter request seeking sole legal custody of the parties' child with his own request for sole legal custody. The trial court reasoned that, as both parties' requests had been denied, P.J.A. could not prove there was a favorable termination in his favor. *See id.* at 10–11. On this basis, the trial court determined P.J.A. could not maintain an action for wrongful use of civil proceedings.

While our reasoning differs from the trial court's, we agree with the trial court's ultimate conclusion to dismiss P.J.A.'s claim for wrongful use of civil proceedings.[6] As more fully discussed below, we conclude that P.J.A. is unable to pursue a viable Dragonetti claim because H.C.N.'s "New Matter" is not the type of pleading that gives rise to an action under the Dragonetti Act.

The history of these proceedings dates to the parties' separation in March 2007. The record shows that the parties have jockeyed for custody since the time their marriage fell apart.

H.C.N.'s request for sole custody in the "New Matter" she filed in 2012 was yet another riposte in that series of parries. H.C.N. responded to P.J.A.'s petition to have the child attend a summer camp by including in her New Matter a series of historical complaints about how she believed P.J.A. was not properly complying with the joint custody order and, in her *ad damnum* clause, she coupled several more incident-specific requests for relief with a general request that the court "[a]ward Mother sole Legal Custody of the parties' minor child." Notably, H.C.N. did not make that request in any formal petition. Predictably, P.J.A. responded to this request in H.C.N.'s New Matter with his own "counter-petition" requesting that he be granted sole

---

[6] An appellate court may affirm the trial court on any basis if the result is correct. **See Lerner v. Lerner**, 954 A.2d 1229, 1240 (Pa. Super. 2008).

- 16 -

legal custody and primary physical custody. Those pleadings therefore were consistent with the parties' normal back and forth.

For Dragonetti purposes, it is significant that H.C.N.'s New Matter does not readily fall within the normal category of pleadings that give rise to Dragonetti litigation. The statute makes actionable misconduct in "the procurement, initiation or continuation of civil proceedings." 42 Pa.C.S. § 8351(a). In normal litigation, "New Matter" does none of those things. Rather, "New Matter" is a part of an answer to a pleading that sets forth affirmative defenses. Pa.R.C.P. 1030. Although there is little law on the subject, a common sense interpretation of the statute makes clear that it should not apply to answers or defensive pleadings, because such documents are designed to bring an action to an end, not to "procure," "initiate," or "continue" it. **See generally Walasavage v. Nationwide Ins. Co.**, 633 F. Supp. 378, 380 (E.D. Pa. 1986) (discussing view that Dragonetti Act does not create cause of action for a "malicious defense").

Here, however, the trial court treated the request for sole custody in H.C.N.'s "New Matter" as the equivalent of a counterclaim seeking a modification of a custody order. Our Court has held that the filing of a counterclaim may constitute the "continuation" of litigation for purposes of a Dragonetti action, but we have directed that "an action for the wrongful use of a counterclaim demands that courts examine such claims closely, lest the defendant be punished for nothing more than defending himself or herself

against a claim made by another." ***Mi-Lor, Inc. v. DiPentino***, 654 A.2d 1156, 1158 (Pa. Super. 1995). The rules applicable to custody actions require a formal request for modification of a custody order to be in the form of a petition, Pa.R.C.P. 1915.15(b), and that a counterclaim be in the form of an initial pleading, Pa.R.C.P. 1915.5(b). H.C.N.'s New Matter did not comply with these requirements.

The trial court chose to treat the "New Matter" as serving the function of such a pleading in light of the parties' litigation history and their repeated custody claims. Nevertheless, we exercise caution in treating the "New Matter" as a formal counterclaim giving rise to a Dragonetti action. Exercising that caution in light of our direction in ***Mi-Lor***, we conclude that, given the parties' litigation history, this is not the type of pleading that the Dragonetti Act was intended to cover.

The parties' litigation history makes clear that their competing claims for custody of their child are only the tip of the iceberg. The record shows that the parties have squabbled and litigated incessantly, not only over primary physical custody and legal custody, but over just about every minute detail of their child's life. The court opinions issued in the various proceedings document a disheartening inability of adult parents to try to get along for their child's benefit and a persistent penchant to resort to repeated litigation in an effort to get their way.

Viewed in this context, we conclude that H.C.N.'s 2012 "New Matter" requesting sole custody is not the type of pleading that should be subject to a Dragonetti action. First, the request was nothing new: H.C.N. and P.J.A. each have sought sole custody on several occasions. Nor was the trial court's denial of that request anything new: the court has steadfastly attempted to preserve a joint custody arrangement that will further the child's best interests, despite incessant squabbling by the parents that has interfered with that goal.

It is also noteworthy that H.C.N. did not file a formal counterclaim, but instead merely included in her New Matter complaints along the same lines that she had voiced in the past, coupled with a request for relief — sole custody — that she had sought in the past. Although H.C.N.'s request could, at some level, be viewed as a "continuation" of the ongoing custody fight under Section 8351(a) of the Dragonetti Act, it is essentially more of the same conduct in which both sides have engaged since their marriage ended. H.C.N. again voiced complaints and sought sole custody; P.J.A. again responded with his own complaints and request for sole custody; and, once again, the trial court, with seemingly endless patience, responded with an order continuing joint custody.

Allowing H.C.N.'s "New Matter" to now be characterized as a basis for a new element of warfare between the parties — a tort action for wrongful use of civil proceedings — would serve no salutary purpose under the

statute. We have disapproved in the past of allowing the Dragonetti Act to be used "to engage the court in another episode in the long saga of disagreements between the parties" or to "waste . . . judicial resources to mediate the historically confused relationship between the parties." *Lerner v. Lerner*, 954 A.2d 1229, 1240 (Pa. Super. 2008). That is the case here.

This does not mean that the parties have no recourse if either of them use the custody proceedings improperly. The Custody Act contains its own mechanism for addressing a party's bad faith. Specifically, Section 5339 permits a court to "award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S. § 5339. The parties' extensive litigation history shows that neither of them is shy about charging the other with the slightest misconduct under the statute, and the trial court, with its extensive knowledge of the parties and their history, is fully able to assess whatever claims of misconduct the parties make during the custody proceedings.

In sum, we agree with the trial court that P.J.A.'s claim for abuse of process is barred by the statute of limitations, and we affirm the trial court's dismissal of P.J.A.'s claim of wrongful use of civil proceedings because, in light of the history of these proceedings and our admonition in *Mi-Lor*, H.C.N.'s filing of her New Matter was not the type of litigation conduct that gives rise to an action under the Dragonetti Act.

Finally, we address H.C.N.'s request, made in her brief, for counsel fees in connection with this appeal. *See* H.C.N.'s Brief at 22–25. This Court may grant such relief "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. Here, while we have rejected P.J.A.'s contentions of trial court error, we decline to find that this appeal warrants an award of counsel fees to H.C.N. pursuant to Rule 2744.

Accordingly, we affirm the order of the trial court sustaining H.C.N.'s preliminary objections and dismissing the amended complaint with prejudice.

Order affirmed. Motion for correction of reply brief granted.[7]

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017

_____

[7] P.J.A.'s reply brief has been considered by this Court in resolving the appeal.