## Freeman, Secretary of Banking, *v.* Rogal, Appellant.

Argued October 3, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Frank R. S. Kaplan,* for appellant.

*Horace Thomas, Jr.,* with him *John W. Lord, Jr.,* Special Deputy Attorneys General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 18, 1945:

The Secretary of Banking took possession of Pittsburgh-American Bank and Trust Company on September 25, 1931. On November 18, 1931, he determined, as Receiver, to liquidate its business and property. On February 1, 1939, he decided to enforce the additional statutory liability of the stockholders for the debts of the bank and gave written notice of assessment and demand for payment on or before March 6, 1939. On October 1, 1941, he brought this suit in assumpsit against one of the stockholders who had failed to pay the assessment. The action was defended on the ground that the period from September 25, 1931, the date of the closing of the bank, to March 15, 1933, the date of the filing of the Receiver's first and partial account, constituted a sufficient time within which he should have made his assessment and demand and that therefore the Statute of Limitations began to run more than six years before the commencement of this action. Defendant set forth as "new matter" the various appraisements of assets and statements of liabilities filed from time to time, all of which showed such an excess of liabilities over appraised value of assets that, it is alleged, it should have been clear to the Receiver almost from the beginning that enforcement of the additional statutory liability of the stockholders would be necessary.

The court sustained plaintiff's motion to strike off the "new matter" and made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense.

In actions brought to enforce the liability of stockholders for debts of the corporation the question has frequently arisen as to the operation of the Statute of Limitations. When the suit was to recover the unpaid balances of stock subscriptions, it was originally deter-

mined, in a number of decisions by this court, that the Statute ran immediately from the date when the insolvency of the corporation appeared either by adjudication in bankruptcy, the making of an assignment for the benefit of creditors, or the appointment of a receiver, but, when the suit was to enforce the additional statutory liability of the stockholders, the Statute ran only from the time when it was determined to what extent such liability would have to be enforced and an assessment or demand was actually made. However, in *Bell v. Brady*, 346 Pa. 666, 669, 670, 31 A. 2d 547, 549, it was pointed out, for the reasons there stated, that since the enactment of the Department of Banking Code of 1933, P. L. 565, there was no longer justification for a distinction in this respect between the two classes of cases and therefore in all such actions the Statute runs, in general, from the time of the making of an assessment or demand by the Receiver.

In *Bell v. Cabalik*, 346 Pa. 115, 29 A. 2d 678, which was an action to enforce the statutory liability of a stockholder of the very bank involved in the present litigation, the question was raised for the first time as to whether the Secretary of Banking as Receiver of an insolvent banking institution could, either intentionally or negligently, unreasonably postpone the making of an assessment without running afoul of the Statute of Limitations. In that case the defendant set up as a defense the bar of the Statute because of the Receiver's failure to make demand within a reasonable time after he knew or should have known that the assets would be insufficient to pay the creditors in full and that an assessment against the stockholders would therefore be necessary. However, that defense, although urged in the brief of an amicus curiae, was not listed by the defendant as one of the questions on appeal, and what was decided was merely that the claim of the Receiver was not barred because of his failure to make the assessment

within six years of the time when he entered into possession of the bank and determined to liquidate its affairs.

In *Bell v. Brady,* 346 Pa. 666, 31 A. 2d 547, the proceedings were in equity against the stockholders of a trust company to recover for unpaid stock subscriptions. The question was there flatly raised—indeed it was the only question submitted on appeal—whether the action was barred by delay, eleven years having elapsed between the time when possession of the bank was taken by the Receiver and the time when he made demand for payment of the balance due on the stock. It was held that while, as previously stated, the rule in such cases was the same as in those to enforce the additional statutory liability, namely, that the Statute runs only from the time when an assessment or demand is made, a further principle was applicable which prescribed that where the time of making a demand is within the control of the plaintiff it must be made within a reasonable time, this being a rule applicable generally to contracts. Accordingly, the court below was directed to hear evidence and determine whether demand had been made within such time and, if not, when the running of the Statute properly began.

In the present case we are asked to extend the application of this principle to suits at law to enforce the statutory liability of the stockholders. We are of opinion, however, that it is a principle applicable only where the liability is contractual and that it has no place where the liability is one created by law and enforceable as a statutory obligation by the Secretary of Banking. Although we held in *Harr, Secretary of Banking, v. Mikalarias,* 328 Pa. 49, 195 A. 86, that proceedings to recover the balances due on stock subscriptions and proceedings to enforce the statutory liability both require the making of a demand or assessment by the Receiver and are both within the compass of section 723 of the Department of Banking Code of 1933, P. L. 565, we cannot sanction

the proposition that in the enforcement of the statutory liability the Secretary of Banking is governed, in imposing an assessment, by a principle, applicable solely to the law of contracts, which would require his doing so within a reasonable or otherwise prescribed time. We are further supported in this view by the consideration that while, in the *Brady* case, the proceedings were in equity before a chancellor, actions to recover on the statutory liability must be brought at law (*Gordon, Secretary of Banking, v. Biesinger,* 335 Pa. 1, 6 A. 2d 425), and it would be obviously impractical to have a multitude of different juries, in suits brought by the Receiver of a bank against its numerous stockholders, attempt to determine whether the Secretary of Banking acted with proper expedition in making the assessment, —a problem complicated, as it is, by the many difficult factors referred to in the opinion in the *Brady* case (p. 671, A. p. 550).

For the reasons stated, we are of opinion that the court below properly struck off the "new matter" and entered judgment against defendant for want of a sufficient affidavit of defense.

Judgment affirmed.

CONCURRING OPINION BY MR. CHIEF JUSTICE MAXEY:

I concur in the result reached in the court's opinion filed in the above entitled case.

In *Bell, Secretary of Banking, v. Cabalik,* 346 Pa. 115, the affidavit of defense set up as "new matter" "that the Receiver failed to make an assessment and demand for payment against the stockholders until February 1, 1939; that the Receiver had no sufficient reason for said delay; that demand for payment should have been made within a reasonable time after said Receiver knew that the assets were insufficient to pay its creditors in full, or at most within the statutory period of limitations, to-wit, six years." In that case the court below said: "The legislature imposed no limit as to the time nor the amount of the assessment, leaving that to the discretion

of the Secretary under the circumstances as he found them to be." On appeal the question as to when the statute of limitations begins to run against the Receiver was not listed by the defendant as one of the questions involved, but the question was set forth and argued in the brief of amicus curiae.

This court has a right to consider any question raised by the pleadings, whether it is mentioned in the statement of questions involved or not. In the *Cabalik* case we declared that a *negative* answer must be given to the question: "Is the claim of the Secretary of Banking barred by the statute of limitations where suit is brought promptly following the making of the assessment but the assessment was not made until more than six years after the Secretary entered into possession of the bank and determined to liquidate its affairs?"

In *Bell, Secretary of Banking, v. Brady,* 346 Pa. 666, the appeal was in an equity proceeding by the Secretary of Banking, as receiver of an insolvent bank, to recover an assessment against the stockholders for unpaid stock subscriptions. Some of the defendants filed preliminary objections to the bill on the ground that it disclosed laches and that the cause of action was barred by the statute of limitations because the Secretary's demand was made more than six years after he took possession of the bank in question. This court said: "Only by presentation and consideration of all the pertinent facts and circumstances at the trial of the cause can the question be satisfactorily determined. The case is not sufficiently clear on the face of the bill to justify a summary decree. Defendants should therefore be required to answer the bill of complaint and the cause be allowed to proceed to a hearing." However, this court also said at page 670: ". . . while the statute ordinarily runs from the making of a demand where such demand is necessary to furnish a cause of action, there is a further rule which prescribes that where the time of demand is within the control of the plaintiff the demand must be made

*within a reasonable time.* The statute cannot be extended by the plaintiff's act or failure to act; he cannot arrest the running of the statute by his own negligence or for his own convenience. This principle has been established in Pennsylvania by a great current of authorities which have applied it under various circumstances." In the footnote were cited several cases allegedly in support of the principles thus stated. We said elsewhere in the opinion that "what constitutes a reasonable time depends on the circumstances of the particular case."

The statements in the excerpts just quoted are mere dicta, are erroneous and are contrary to our former decisions. The cases cited in support of the dicta are wholly inapplicable in a suit by a Secretary of Banking against stockholders of closed banks. "The rule that where a plaintiff's cause of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot indefinitely suspend the running of the statute of limitations by delaying the performance of the preliminary act" has no application to a case of this kind where the liability and procedure are determined by statute. The section of the Banking Code applicable to this and similar cases is Sec. 723 of Art. VII of the Act of May 15, 1933, P. L. 565 (71 P. S., Sec. 733-723), which provides as follows: "If at any time after he takes possession of a corporation as receiver, *it shall appear to the secretary* that the assets of such corporation will be insufficient to pay in full its debts to depositors and other creditors, *he shall, as soon as expedient, estimate* the amount which shall be assessed against all shareholders who are, under these circumstances, personally liable for any part of the debts of such corporation, by reason of their ownership of such shares. He shall assess against such shareholders the amount which he then deems necessary for the payment of such debts, not however exceeding the maximum liability of such shareholders, as provided by law." (Italics supplied.)

To the assessment made by the Secretary of Banking acting as a Receiver of the closed bank there is no defense except as we said in *Bell v. Culler*, 347 Pa. 253: "The conclusion of the Secretary that the assets will be insufficient to meet the liabilities and that an assessment is required must be accepted as prima facie correct, that is, subject to attack only for fraud, illegality, bad faith, or obvious error."

The question now before us was decided by this court in the case of *Kirschler v. Wainwright*, 255 Pa. 525. In that case a receiver for an insolvent bank was appointed on January 23, 1908. On February 21, 1910, the receiver (under the practice prevailing before the Banking Code) obtained from the court the authority to enforce the full statutory liability of the stockholders. The receiver instituted suit against stockholder Wainwright *more than 6 years* from the date of insolvency but less than 6 years from the date when it was judicially ascertained (under the practice then applicable) that the bank's assets were insufficient to pay its debts. This court said: "The controlling question is: Does the statute of limitations run from the initial insolvency decree, when the receiver was appointed, or from the time of the decree ascertaining the deficiency of assets and authorizing the assessment?" This court, affirming the court below, declared that the statute began to run *from the date the assessment was authorized.* (Italics supplied.)

It was not even contended in that case that the statute began to run when in *the judgment of some jury* the receiver should have made the assessment against stockholders, but if that was the date from which the six year limitation should have been computed this court would have said so in the comprehensive opinion filed.

Zollmann on the Law of Banks and Banking, Permanent Edition, Vol. 1, Sec. 516, p. 402, makes this statement: "Since the liability of a stockholder in a national bank is conditional, the statute of limitations does not begin to run in favor of a stockholder until the assessment has been made by the Comptroller.

"On the appointment of a receiver, the stockholder merely knows that his liability is contingent on the insufficiency of the assets to pay the creditors and the declared ascertainment of this fact by the Comptroller.

"The fact that the Comptroller has unreasonably delayed [1] such assessment is immaterial."

The Comptroller of the Currency bears substantially the same relation to national banks as a state Secretary or Superintendent of Banking bears to state banks.

Both Federal and State appellate courts seem to be in complete accord in holding that the question as to the time when an assessment shall be made by the appropriate official against stockholders of closed banks is a matter that must be left to that official's determination. In *Kennedy v. Gibson*, 75 U. S. 498 at 505, and others, Justice SWAYNE, speaking for the Supreme Court of the United States, said:

"The receiver is the instrument of the comptroller. He is appointed by the comptroller, and the power of appointment carries with it the power of removal. It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver. The fact must be distinctly

---

[1] If creditors believe the Secretary of Banking is unduly delaying liquidation they can go into the court of equity in which the certificate of possession of the closed bank is filed, and which supervises the Secretary's receivership of that bank, and they can ask that court to take appropriate action to speed up the work of liquidation.

averred in all such cases, and if put in issue must be proved."

In *Rankin v. Barton,* 199 U. S. 228, Justice Mc-KENNA, speaking for the United States Supreme Court, said in respect to the contention upheld by the court below in that case that when an act to be done is wholly within the control of the party suing, he must perform it within a reasonable time, and such time cannot extend the period within which the action would be barred, if no such preliminary step were necessary: "We think the court overlooked the official character and power of the Comptroller of the Currency, and the decisions of this court declaring them. A national bank is an instrumentality of the United States, its circulating notes are guaranteed by the United States, and if the United States should be compelled to pay them the United States has a paramount lien on the assets of the bank for reimbursement. The administration of the bank's assets is, therefore, vested in the Comptroller of the Currency as an officer of the United States. He appoints the receiver and directs his acts. The individual liability of a stockholder can only be enforced by his order. The provision is as much for the benefit of the stockholders as for the United States, and it is indispensable to the bringing of a suit against the stockholder. In other words, the liability dates from the order of the Comptroller."

In *Hale v. Cushman,* 96 Me. 148, 51 A. 874, the Supreme Court of Maine held that: (quoting from the syllabus) "Where a Minnesota corporation was adjudged insolvent May 20, 1893, but the fact and amount of the deficiency of the corporate assets to pay corporate debts were not adjudicated until November 5, 1897, when a special receiver was appointed to collect the amount of such deficit from the stockholders, the duty of the stockholders to make contribution did not arise till the latter date, and an action begun within six years from that date, November 3, 1897, is not barred by our statute of limitations."

In *Miller v. Stock,* 65 F. (2d) 773 (3rd C. C. A.), the court said: "That the making of the assessment is intrusted to the Comptroller, and that his action cannot be attacked collaterally, has been uniformly held by federal courts, following *Kennedy v. Gibson et al.,* 8 Wall. 498, 505, 19 L. ed. 476, where it is said: 'It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. *It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him.'*" (Italics supplied.)

The precise question as to the time when an assessment against stockholders of closed banks should be made was raised in the case of *Cruse v. Shaw et al.,* 93 S. W. (2d) 541 in 1936. The Court of Civil Appeals of Texas there said: "The controlling question here is, When did limitation begin to run? . . . *It is our conclusion that limitation did not begin to run until the banking commissioner made the levy.* [Citing cases] . . . It is urged that the banking commissioner had no right or discretion to delay the necessary steps to enforce the stockholders' liability; that if he could delay the making of the assessment for four years he might, upon the same reasoning, have delayed it for forty years. . . . Appellant seeks to invoke the rule that where a plaintiff's cause of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot indefinitely suspend the running of the statute of limitations by delaying the performance of the preliminary act. . . . We think it clear that *this rule can have no application in this case.*" (Italics supplied.)

Not only is the applicable section of the Banking Code so clear in vesting discretion in the Secretary of

Banking to "as soon as expedient estimate the amount which shall be assessed against all shareholders . . ." that no interpretation ought to be necessary, but so to interpret the act as to make the Secretary's discretion a matter for a jury's decision in every one of the thousands of cases in which the Secretary sues the shareholders of closed banks would lead to results that are absurd and unreasonable, and such a construction of statutes the 51st section of the Statutory Construction Act of May 28, 1937, P. L. 1019 (46 P.S. 551), declares should be avoided. See *Watson v. Witkin, et al.*, 343 Pa. 1, 6, 22 A. 2d 17. There are 5,500 stockholders of closed banks in Pennsylvania who have been assessed under the Banking Code. 253 of these reside in states other than Pennsylvania. The number of suits commenced in Pennsylvania against stockholders of closed banks to collect unpaid assessments on their stock is *3,115*. There are *44* similar suits pending against stockholders in suits outside of Pennsylvania. For the Secretary of Banking to be called upon to justify before juries his more than six years delay in making assessments against shareholders of closed banks in every one of the thousands of cases he has so delayed for presumably good and sufficient reasons would be to place an intolerable burden upon that official and would in a large measure paralyze the liquidation of closed banks. It would be likely to happen that different juries in suits against the shareholders of even the same bank would reach different conclusions as to the reasonableness of the Secretary's delay. Juries in suits in outside states against non-Pennsylvania shareholders of closed Pennsylvania banks would be quite likely to make findings in favor of the defendants.[2]

---

[2] Whatever defense the statutes of Pennsylvania as construed by this Court makes available to a Pennsylvania stockholder of a closed bank when that stockholder is sued by the State Secretary of Banking on his stock assessment is equally available to non-resident stockholders of a closed Pennsylvania bank who are similarly sued by our State Secretary of Banking, for the liability of a stockholder of a bank is contractual in character. See *Cushing v. Perot*, 175 Pa. 66;

The rule that the statute of limitations does not begin to run in favor of a stockholder of a closed bank until the amount of his assessment is fixed seems to be universally applied whenever the question has arisen.[3]

34 A..447; *McNutt v. Bakewell*, 223 Pa. 364, 72 A. 639; *Broderick v. Stephano*, 314 Pa. 408, 171 A. 582; *Broadway National Bank v. Baker*, 176 Mass. 294, 57 N. E. 603; *Marshall v. Sherman*, 148 N. Y. 9, and also the decision of the United States Supreme Court in *Whitman v. Oxford National Bank*, 176 U. S. 559. See Beale on Conflict of Laws, Vol. 2, Sec. 186.10, p. 883. Justice HOLMES in *Davis v. Mills*, 194 U. S. 451, said: "The source of the obligation is the foreign law, the defendant, generally speaking, is entitled to the benefit of whatever conditions and limitations the foreign law creates" and "courts have been willing to treat limitations of time as standing like other limitations and cutting down the defendant's liability wherever he is sued." . . . "Limitation goes to the right created and accompanies the obligation everywhere."

The liability of stockholders of a banking institution is contractual in its nature. Braver "Liquidation of Financial Institutions," Sec. 400 at 426: "A stockholder in a bank of a foreign state is bound to the extent of the liability imposed by the laws of that state, as the laws of that state control in the determination of the rights and obligations of the stockholders and the procedure to be followed in fixing such liability." *Broderick v. Rosner*, 294 U. S. 629.

[3] Section 632 of the New York State Banking Code provides that the Superintendent of Banks of that state "shall have a cause of action, in his own name, as Superintendent of Banks, against such stockholder and against any other person liable for or upon such assessment without notice or demand either severally or jointly with other stockholders of such corporation, for the amount of such unpaid assessment or assessments, together with interest thereon from the date when such assessment was, by the terms of such notice, due and payable." The date of that cause of action is the date fixed by the Superintendent of Banks for the payment of the assessment and shall be not "earlier than thirty days from the date of such notice" (i. e. notice of the assessment). It was held in *White v. Aaronson*, 1938, 169 N. Y. Misc. 593, 7 N. Y. S. 2d 901, that a cause of action to enforce the statutory liability of stockholders of a state bank did not accrue until the due date of the assessment under the notice served by the superintendent of banks. In *Broderick v. Aaron*, 268 N. Y. 411, 198 N. E. 11, it was held that the date of the determination by the Superintendent of Banks to levy an assessment on stockholders of closed banks and the maturity of the demand for its payment is when the six year statute of limitations begins to run.

Apparently the question has not arisen frequently, for but few persons would see any possibility of a successful raising of the plea of "unreasonable delay" or laches against the official who is entrusted by the appropriate sovereignty (national or state) with the important duty of liquidating insolvent banks in his jurisdiction.

The decisions of this court on the question of when the statute of limitation begins to run against the Secretary of Banking in a suit to enforce the statutory liability of shareholders in closed banks of which the Secretary is the receiver, in *Kirschler v. Wainwright*, supra, and in *Bell, Secretary, v. Cabalik*, supra, which decisions are now followed in this case, should leave no room for any further doubt as to the law governing this important matter.

In California, a similar ruling as to when the statute of limitations begins to run in favor of stockholders of insolvent banks was made in the case of *Richardson, Superintendent of Banks, v. Craig et al.*, 77 Pac. R. (2d) 1077. The law in Michigan is in accord with the above decisions. See *Burger's Estate*, 276 Mich. 485; *Dawson v. Detweiler*, 299 Mich. 613. See also *Mister v. Thomas*, 122 Md. 445, 89 A. 844; *Miller v. Connor*, 177 Mo. App. 630, 160 S. W. 582; and *Commissioner of Banks v. Hanover Trust Company*, 247 Mass. 347.