## Freeman, Secretary of Banking, Appellant, *v.* Abraham.

Argued September 26, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Francis Taptich,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, for appellant.

*A. M. Simon,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 11, 1946:

This appeal raises the question whether the Secretary of Banking, as receiver of a closed bank, having made one assessment for 100% against the stockholders, may subsequently make another assessment for 100% against the same stockholders. The court below held that he may not.

On January 27, 1932, the Secretary of Banking, as receiver, entered into possession of The Pennsylvania Deposit Bank of McKeesport. On March 22, 1932, he concluded that the bank should be liquidated. On May 31, 1934, the Secretary, having determined that the bank's assets were insufficient to pay creditors in full, made a 100% assessment against the stockholders, in accordance with the Department of Banking Code of

1933, P. L. 565, 71 PS section 733, et seq. Notices were sent to the stockholders demanding payment by June 30, 1934. It would appear from plaintiff's exhibit "B" to the statement of claim that some of the stockholders have made full or partial payments on account of this assessment and an assessment hereafter referred to. Others have not, including the defendant.

The Secretary of Banking, becoming apprehensive concerning the sufficiency of the notice which he had given under the 1934 assessment, and ignoring the advice of his counsel to give all stockholders new and valid notices of such assessment, on October 18, 1943, made a second assessment of 100% against all stockholders. Notices were sent to the stockholders. The regularity of such later notices is conceded. A suit in assumpsit was then instituted against defendant on January 28, 1944, to collect such 1943 assessment. An affidavit of defense was filed and issue joined. After the trial in the court below, the jury was directed to render a verdict for defendant. Motions for new trial and for judgment for the plaintiff n. o. v. were dismissed by the court.

The learned court below accurately stated: "The Banking Department is authorized by the applicable statutes to make as many assessments as may be necessary upon the stockholders in order to pay the debts of the bank, provided, the total number of assessments does not exceed one hundred per cent of the par value of the outstanding capital stock."

Counsel for the appellant concedes that no assessment is enforceable unless it is accompanied by a legal notice of such assessment and demand for payment; and that the notice and demand concerning the assessment of 1934 did not comply with the Banking Code and hence was insufficient to impose liability upon the stockholders. He vigorously argues that this irregularity was corrected, not by a new and amended notice of the 1934 assessment, but by a new 100% assessment on October 18, 1943, with notice and demand made thereon (the

basis of the instant suit). We agree with the learned court below that appellant's contention is without merit.

Appellant fails to distinguish between an assessment and the prescribed statutory method of imposing liability under the assessment upon individual stockholders. Section 723 of the Department of Banking Code, 71 PS section 733-723, provides as follows: "A. If at any time after he takes possession of a corporation as receiver, it shall appear to the secretary that the assets of such corporation will be insufficient to pay in full its debts to depositors and other creditors, he shall, as soon as expedient, estimate the amount which shall be assessed against all shareholders who are, under these circumstances, personally liable for any part of the debts of such corporation, by reason of their ownership of such shares. He shall assess against such shareholders the amount which he then deems necessary for the payment of such debts, not however exceeding the maximum liability of such shareholders, as provided by law. The secretary shall send to every such shareholder by registered mail to the address which appears on the records of the corporation, or if none appears there, then to his last known address, a demand that the amount assessed against him be paid. Such demand shall state the total amount assessed by the secretary against all the shareholders, and the specific amount to be paid by the particular shareholder. It shall also designate a period within which such assessment shall be paid, such period to be not less than thirty days after the date of the sending of the notice. If any shareholders shall not pay the amount assessed against them, the secretary may institute actions at law or in equity against them, either severally or jointly, for the amount of such assessment, together with interest from the date designated in the notice from the secretary, for the payment of such assessment. In such action, the written statement of the secretary, signed by him in his official capacity as receiver and bearing the seal of the department, asserting

that the assets of the corporation appear insufficient to meet its liabilities to depositors and other creditors, that consequently he has made an assessment against the shareholder or shareholders being sued, that the period designated for the payment of the assessment has expired, and that the value of the assets of the corporation and the liabilities of such corporations are as set forth, shall be prima facie evidence of the facts therein stated. B. The secretary may make as many partial assessments as shall appear expedient, until the total liability of the shareholders, or the total amount necessary to pay in full the depositors and other creditors of the corporation, has been assessed."

It is clear, therefore, that the code provides for a general assessment against all stockholders. Each individual stockholder becomes liable under the assessment after he is notified of such assessment by registered mail and of the amount due by him thereunder, with a demand for payment not less than thirty days thereafter.

To adopt appellant's contention would result in a most anomalous situation. This record does not disclose what notices were sent and the contents thereof under the 1934 assessments. Neither does Schedule B disclose whether payments were made by stockholders under the 1934 assessment or under the 1943 assessment. Suits under the 1943 assessments, with a prior valid assessment outstanding, would result in untold confusion. It is apparent that in order to enforce the liability of the defendant stockholder it will be necessary to mail to him, in the manner prescribed in the Code, a proper legal notice of such assessment and demand of payment thereof. If notice and demand have not been given in the prescribed statutory manner, new and legal notice may still be given based on the 1934 assessment.

Appellee contends that an action against him under the assessment of 1934 would now be barred by the statute of limitations. That question is not before us. However, we may call attention in that connection to our

decisions in *Freeman, etc., v. Rogal,* 351 Pa. 266, 40 A. 2d 853, and in *Freeman v. Brady et al.,* 352 Pa. 249, 42 A. 2d 451.

The appeal from the judgment is dismissed, without prejudice to the enforcement and collection of appellee's liability, if any, under the assessment of 1934.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE MAXEY:

I dissent from the majority opinion. It is clear to me that the Secretary of Banking made *no* assessment against the appellee which imposed *any* liability on him until that official on January 28, 1944, "assessed" him the amount he "deemed necessary" and sent him "by registered mail . . . a demand that the amount assessed against him be paid." Then *and not until* then did this shareholder's obligation to pay, and the Secretary's right to collect from him, *arise*.

The measure of the maximum liability of a shareholder of an insolvent bank to a levy to help make up the insufficiency of the bank's assets, is 100% of the par value of his stock. Under Section 723 of the Banking Code, no such liability rests upon a shareholder *until* the Secretary of Banking, as the Receiver of the closed bank, (1) "assesses" against the shareholders the amount which the Secretary "deems necessary for the payment of such debts, not however exceeding the maximum liability of such shareholder as provided by law," *and* (2) "sends to every such shareholders by registered mail to the address which appears on the records of the corporation, or if none appears there, then to his last known address, a demand that the amount assessed against him be paid."

Since no such "demand" was made upon this shareholder after the making of the *1934* "assessment" it follows that the latter imposed no liability upon him. There was no power to collect anything from this defendant

until the demand prescribed by statute as a prerequisite to a shareholder's liability was made. A cause of action accrues only when one has the right to institute a suit. *McDonald v. Leverington Construction Co.*, 331 Pa. 381, 200 A. 8, 9. This court has declared unequivocally that the statute of limitations begins to run against the Secretary of Banking as Receiver of a closed bank "only from the date when by proper notice to the stockholders, he demanded that payment [of the assessment] should be made:" *Bell, Secretary, v. Brady et al.*, 346 Pa. 666, 670, 31 A. 2d 547. It was decided in *Freeman v. Rogal*, 351 Pa. 266, and in earlier cases that the statute of limitations against a Receiver of a closed bank does not begin to run until the Receiver makes the levy he is authorized to make. This consists of an assessment *plus a demand made in* statutory form.

The verb "assess" has two meanings: (1) "To determine the amount of" a tax or charge, and (2) "to determine *and* impose a tax" or charge. (See any standard dictionary). When Section 723 of the Banking Code uses the phrase "He [the Secretary] shall assess against such shareholders the amount which he then deems necessary," etc., it obviously uses "assess" in the first named sense. The Secretary's "determination" does not become a legal levy until he makes a "demand that the amount assessed against" the shareholder "be paid" and designates within what period it shall be paid and sends a notice of this demand and time designation to the shareholder "by registered mail." Until *all* this is done the Secretary's power to make a levy is not exhausted or impaired. When the Secretary determines the amount which shall be assessed against the shareholders, his "determination" alone is a mere "brutum fulmen" which does not affect his authority to make later a 100% assessment because his compliance with all the statutory prescriptions as to demand and notice is necessary to make his assessment a jural act giving rise to rights and obligations. It is the "demand" and "notice" which gives

the "assessment" its legal compulsion. The error in the reasoning of the court below is in its statements: ". . . the Banking Department on May 31, 1934 levied a one hundred per cent assessment . . ." and thereby its power to levy assessments against shareholders was "fully exercised." The answer to this is: The Secretary "determined" in 1934 on such an assessment but never "levied" it, and therefore his power was *not* "fully exercised." [1]

The fact that a few of the shareholders "made full or partial payments on account of this [1934] assessment" (as the majority opinion states) is immaterial in this issue between the Secretary of Banking and this one defendant. A shareholder who received by registered mail the demand for payment which the statute prescribes as an essential of the liability of a shareholder of a closed bank would be discharging a legal obligation by paying the assessment. A shareholder who, like this appellee shareholder, received *no demand* in statutory form for the payment of the 1934 "determination" or "assessment", *was under no obligation to pay anything* and, of course, the Secretary, in that state of the record, had *no right* to make him pay. As to *this defendant* no assessment *which carried with it any legal compulsion* was made against him *until* the 1944 assessment, *followed by due demand,* was made. Therefore, he (and any shareholder similarly situated) was and is in no position to complain that he was assessed *twice.* It is obvious that he was *not* assessed twice, for the simple reason that he never received the *demand* and *notice* by registered mail which section 723 of the Banking Code makes *exactly as essential* to a shareholder's legal liability to

---

[1] For example, if the Secretary should determine that a *50%* assessment on the shareholders was all that was necessary but *before* sending out the statutory demand by registered mail, he should determine that a *100%* assessment on the shareholders was necessary and should then send to the shareholders in the prescribed manner the demand for a 100% assessment, it could not logically be held that the first 50% "assessment" which never ripened into a "levy" made the 100% assessment void pro tanto.

pay as it makes what it calls the "assessment of the amount which he [the Secretary] then deems necessary." This "assessment" is obviously the Secretary's computation or determination of the amount needed from the shareholder. *Before* the Secretary can proceed to *collect* from the shareholder, he must under the statute take a *second* equally important step, which is, as already pointed out, (1) make a formal demand on the shareholder for payment, (2) designate the period within which payment must be made, and (3) send to the shareholder a notice of this demand and period for payment, "by registered mail".

· In this case the Secretary of Banking determined upon an assessment of $100,000 against the shareholders of this closed bank. *Forty-one of the shareholders who* would have had *a liability of $80,950 if they had received a demand in due form of the Secretary's determination or "assessment" have paid nothing on their statutory liability.*

If the action of the court below is sustained, substantial practical difficulties will be put in the way of the Secretary of Banking's collection of anything from the shareholders of this bank who have up to this time paid nothing. For one thing, demands and notices under the *1934* assessment will now have to be sent out "by registered mail", and separate suits in assessments and statements of claim will have to be filed by the Secretary of Banking in each case, because the pending suits based on the 1944 assessment will now be of no avail. As the Secretary of Banking has about completed his liquidation of closed banks and has dispensed with the service of most of his legal staff, it will probably be. necessary for him, in order to begin new cases against these shareholders, to engage additional counsel. I see no reason why the Secretary of Banking and the Commonwealth should be put to this unnecessary annoyance and expense.

Furthermore, if we would decide that the defendant's obligation to pay the assessment made by the Secretary

of Banking did *not* arise until a *demand* for a payment was made *in the manner prescribed by the Banking Code* and the *1934* mere determination of liability created no respective rights and obligations in the parties, we would thereby avoid any troublesome question as to *when* the statute of limitation began to run in the defendant's favor. If the *1934* determination (i.e. "assessment") gave the Secretary of Banking the *right to collect* from this defendant the amount then "determined", it would be logical to hold that the statute of limitation began to run *from the date of that determination.* If the "assessment" of 1934 gave the Secretary of Banking *no right to collect anything* from this shareholder *until a demand for payment was made in statutory form,* it follows that the 1934 assessment standing alone vested in the Secretary no legal right whatever to collect anything from this shareholder and consequently it did *not* impair in any way the Secretary's right to make an *effective* assessment against the shareholder in 1944.

I would let *the suits now pending* under the 1944 assessments, which were followed by due demand and statutory notice, proceed to final judgments.

Mr. Justice DREW and Mr. Justice PATTERSON concur in this dissent.